

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RDI OF MICHIGAN, LLC,

     Plaintiff,

v.

MICHIGAN COIN-OP VENDING, INC,
JORDAN MIRCH, and DOES I-V and ROES
VI-IX,

     Defendants.

Case: 2:08-cv-11177
Judge: Zatkoff, Lawrence P
Referral MJ: Majzoub, Mona K
Filed: 03-19-2008 At 10:33 AM
CMP RDI OF MI V. MIRCH, ET AL (TAM)

---

## PLAINTIFF RDI OF MICHIGAN'S MOTION FOR EX-PARTE TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND FOR SEIZURE AND IMPOUNDEMENT OF INFRINGING GOODS

Plaintiff RDI of Michigan, LLC, ("RDI"), through counsel, petitions this Honorable Court for an ex-parte Temporary Restraining Order, a Preliminary Injunction to enjoin Defendants from copying and using in commerce infringing copies of RDI's copyrighted works and illegally creating derivative works thereof, and for an Order seizing and impounding the infringing goods, and states:

1.     RDI is the owner of copyrights TX-6-062-022 and TX-6-062-023 in computer code for video poker games, originally created by Merit Industries, Inc. (the "Video Poker Games"). RDI is also the owner of copyright PA-1340-639, covering the audiovisual elements of the Video Poker Games.

2.     As set forth in the Verified Complaint, the affidavits of former Michigan Coin-Op Vending, Inc., employees Dan Domek and Kevin Carson, other exhibits, and the brief in support of this motion, Defendants have been illegally "knocking off" and distributing unauthorized copies of

the Video Poker Games throughout the State of Michigan, and continue to do so.  Basically, MCO has used a chip burner to copy computer chips containing RDI's copyrighted computer code and placing those counterfeit, knock-off chips in game counsels so as to operate an illegal business.

3.     RDI is being irreparably harmed by the continuing and blatantly willful infringement of its copyrighted works, and will continue to be so harmed in the absence of injunctive relief.  Increasing the need to immediate ex-parte relief is the fact that there is direct evidence, as stated in the affidavits of Domek and Carson, that Mirch is not only infringing RDI's copyrights, but is also deliberately engaging in conduct to cover his tracks by destroying evidence of his infringement.

4.     In addition to granting an injunction, section 503(a) of the Copyright Act authorizes this Court to order the seizure and impoundment of "all copies . . . claimed to have been made or used in violation of the copyright owner's exclusive rights" and of all devices by means of which such copies may be reproduced.

5.     For the reasons set forth in the Verified Complaint, the affidavits of Don Domek and Kevin Carson, the brief and other exhibits accompanying this motion, Plaintiff respectfully requests that this Court enter an ex-parte temporary restraining order and, subsequently, a preliminary injunction, as well as an order of seizure and impoundment as set forth as follows in the accompanying proposed order:

    a.     Prohibiting Defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation them who receive actual notice of the injunction, from:

        i.     operating, copying, reproducing, selling, offering for sale, or displaying;

        ii.     transferring, moving, relocating, disposing of, dissipating, discarding, secreting, or hiding;

        iii.     tampering with, modifying, changing, convening, altering, adjusting, repairing, revising, amending, or varying - any video poker game that

- 2 -

infringes on or is derivative of RDI's Video Poker Games and its copyrights, as identified herein, including, but not limited to, any computer board(s), computer chip(s), computer equipment, or any other electronic storage devices; including, but not limited to, DVDs and/or computer storage discs, U9 chips containing any video poker game that infringes on or is derivative of RDI's Video Poker Games and/or the computer source code from which it derives; and

b.      Authorizing the seizure and storage of all infringing video poker games, circuit boards, and other materials in the possession of the Defendants MCO and Mirch and all persons in privity or acting in concert with those Defendants.

6.      Plaintiff has not sought concurrence in this order because Plaintiff justly fears that, if given advance notice of Plaintiff's motion, Defendants would immediately seek to secret or destroy the infringing materials and devices.

WHEREFORE, RDI prays that this Court:

A.      enter a TRO and preliminary injunction against MCO, Mirch, their respective agents, employees, officers and directors, attorneys, successors, licensees and assigns and all others acting in concert with them ("Defendants") which:

1.      Enjoins Defendants from engaging in further infringement, including without limitation engaging in further knocking off computer chips containing RDI's copyrighted Video Poker Game computer programs;

2.      Orders Defendants to deliver up for impound and ultimate destruction all infringing materials and devices, including chip burner, discs, U9 chips, computer boards and other storage media which contain infringing copies of RDI's copyrighted Video Poker Games which are within Defendants' possession, custody or control;

B       enter an order of impoundment authorizing the seizure and storage of all infringing

video poker games, circuit boards, and other materials in the possession of Defendants MCO and Mirch, and all persons in privity or acting in concert with these Defendants; and

C.      Grant any other appropriate relief.

STEPHEN F. WASINGER PLC

By: __/s/ Stephen Wasinger_____
        Stephen Wasinger (P25963)
300 Balmoral Centre
32121 Woodward Avenue
Royal Oak, MI 48073
Tel: (248) 554-6306
Fax: (248) 479-0391
sfw@sfwlaw.com

And

ANTHONY L. DELUCA, PLC

By:___/s/ Anthony DeLuca_____
        Anthony L. DeLuca (P64874)
14950 East Jefferson Avenue, Suite 170
Grosse Pointe Park, MI 48230
Tel: (313) 821-5905
Fax: (313) 821-5906
anthony@aldplc.com

Dated: March 18, 2008

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RDI OF MICHIGAN, LLC,

       Plaintiff,

v.

MICHIGAN COIN-OP VENDING, INC,
JORDAN MIRCH, and DOES I-V and ROES
VI-IX,

       Defendants.

Case: 2:08-cv-11177
Judge: Zatkoff, Lawrence P
Referral MJ: Majzoub, Mona K
Filed: 03-19-2008 At 10:33 AM
CMP RDI OF MI V. MIRCH, ET AL (TAM)

---

**BRIEF OF PLAINTIFF RDI OF MICHIGAN, LLC, IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION, AND FOR SEIZURE AND IMPOUNDEMENT OF INFRINGING GOODS**

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................... i

ISSUES PRESENTED..................................................................................... ii

STATEMENT OF FACTS ................................................................................1

I.      Introduction ..........................................................................................1

ARGUMENT....................................................................................................7

I.      THE COURT SHOULD GRANT RDI'S REQUEST FOR A TEMPORARY
        RESTRAINING ORDER AND PRELIMINARY INJUNCTION, TO STOP
        DEFENDANTS' ONGOING INFRINGEMENT OF RDI'S INTELLECTUAL
        PROPERTY RIGHTS IN ITS VIDEO POKER GAMES ................................7

        A.      RDI Is Likely To Succeed On The Merits Of Its Claims. .....................7

        B.      Riviera Will Suffer Irreparable Harm If A TRO and Preliminary Injunction
                Is Not Issued. ...........................................................................9

        C.      The Public Interest Will Be Best Served By The Issuance Of A TRO And
                Preliminary Injunction. ..............................................................11

        D.      Granting Of The TRO and Preliminary Injunction Will Not Cause
                Substantial Harm To Others........................................................12

II.     THE COURT SHOULD GRANT RDI'S REQUEST FOR AN ORDER OF
        IMPOUNDMENT AUTHORIZING THE SEIZURE AND STORAGE OF ALL
        INFRINGING COPIES AND THE DEVICES USED BY DEFENDANTS TO
        CREATE THEM...........................................................................12

CONCLUSION..............................................................................................13

## ISSUES PRESENTED

Should the Court issue a TRO, preliminary injunction, and order for seizure and impoundment of infringing goods which (a) enjoins Defendants from engaging in copyright infringement, including knocking off RDI's copyrighted Video Poker Game computer programs, (b) orders Defendants to deliver all knock-offs to the Court during the pendency of this litigation, and (c) authorizing the seizure and storage of all infringing video poker games, circuit boards, U9 chips, and other materials in the possession of Defendants used to create the infringing goods, when:

• Plaintiff owns copyrights on the computer code and the audiovisual elements of the Video Poker Games; and

• Defendants have directly copied Plaintiffs copyrighted work by having "knock-off" circuit boards and U9 chips produced with Plaintiff's Video Poker Games embedded in the boards and chips; and

• Defendants have been circulating their infringing game in commerce in massive numbers without authorization from Plaintiff?

Plaintiff answers 'Yes."

## STATEMENT OF FACTS

### I.    Introduction

Section 502(a) of the Copyright Act, 17 U.S.C. § 502(a), authorizes this court to enter a preliminary injunction to stop infringement.

Section 503(a) of the Copyright Act authorizes this Court to order the seizure and impoundment of "all copies . . . claimed to have been made or used in violation of the copyright owner's exclusive rights" and of all devices by means of which such copies may be reproduced. *See, e.g., Columbia Pictures Industries, Inc. v. T & F Enterprises, Inc.*, 68 F.Supp.2d 833 (E.D.Mich.1999) (Gadola, J.) (seized video cassettes); *RSO Records, Inc. v. Peri*, 596 F.Supp. 849 (C.D.N.Y. 1984) (counterfeit records and recording equipment); *Entral Group Intern., L.L.C. v. New York One Cafe Inc.*, 2007 WL 869587, *8-9 (E.D.N.Y. 2007) (karaoke works and recording equipment).

Here, the evidence demonstrates that the Court should do both because Defendants have engaged in a willful scheme to knock-off Plaintiffs' copyrighted Video Poker Games by the simple, indeed primitive copying of the computer chips which contain the copyrighted Video Poker Game software programs.

In most cases, plaintiffs must rely on circumstantial evidence to establish copying. Here, however, there is direct evidence that Defendants have been engaged in a scheme to create knock-offs of RDI's copyrighted Video Poker Games and to use those knock-offs in its business in order to avoid a prior agreement with RDI in which Defendants (a) acknowledged RDI's rights and (b) agreed to license authorized Video Poker Games from RDI.

Based on available information, it appears that Defendants have placed more than 130 of the infringing games into the market in Michigan.

This Court should enter a temporary restraining order, preliminary injunction, and order for seizure and impoundment of infringing goods, which (1) enjoins MCO from further making additional knock-offs, (2) requires MCO to deliver all existing knock-offs and the devices which

- 1 -

Defendants used to knock-off the computer chips containing Defendants' copyrighted Video Poker Games, and (3) authorizes the seizure and storage of all infringing video poker games, circuit boards, and other materials in the possession of Defendants.

## II.     The Copyrighted Works

RDI is the exclusive licensee in the State of Michigan for the sale and distribution of the copyrights in the Video Poker Games.  The computer software programs incorporated into the Video Poker Games have been registered with the U.S. Copyright Office as Copyright Registration Nos. TX-6-062-022 and TX-6-062-023 and PA 1-340-639.  (Copies of the Copyright Registrations are attached as Exhibits A, B, and C.)

Copyright Registration Nos. TX-6-062-022 and TX-6-062-023 are valid and subsisting copyrights in the computer code for the Video Poker Games.  Copyright Registration No. PA 1-340-639 is a valid and subsisting copyright in the audiovisual components of the Video Poker Games. That copyright protects the graphic and sound elements of the Video Poker Games, i.e., the "look and feel" of the games at the user interface, and its methods of play.  (The copyrights and the Video Poker Games are sometimes hereinafter referred to collectively as the "Copyrighted Works").

The Copyrighted Works are derivative works of earlier versions of the Video Poker Games, which were registered with the United States Copyright Office as Copyright Registration Nos. TX 1-291-223, 1-291-225, 16 291-228, 1425-047, and 1-338-172 by Merit Industries, Inc. ("Merit"). Features of the Video Poker Games have also been trademarked and registered with the U.S. Patent and Trademark Office.

RDI obtained its exclusive license from Riviera Distributors, Inc. ("Riviera"), an Illinois corporation.  Pursuant to its exclusive license agreement with Riviera, RDI has the rights to sue for infringement of the copyrights and trademarks as well as to sue for any other claims which arise out of the infringing activities.  Riviera obtained all right, title and interest in the copyrights and intellectual property of the Video Poker Games from Merit pursuant to a Bill of Sale and Intellectual Property Assignment, effective as of March 12, 2004.

The Video Poker Games consist of a computer software program that is copied onto a U9 computer chip, among other programmable chips, which are then positioned on a circuit board. The circuit board, in turn, is installed into an upright game cabinet by attaching it to a video game harness with a monitor, bill acceptor, and various buttons that control the video game. When properly assembled and rendered operational, the computer program, circuit board, computer chips, harness and monitor interact to permit consumers to play the Video Poker Games. Modifications were made to the original Video Poker Games adding additional features such as bonus functions and increased speed of play (the "Enhancements").

## II. The Defendants

Defendant Michigan Coin-Op Vending, Inc. ("MCO") is a Michigan Corporation with its principal place of business in Ferndale, Michigan. Defendant Jordan Mirch owns MCO and is a resident of Troy, Michigan.

MCO is in the business of distributing coin operated amusement games and devices. MCO operates routes for the placement of coin-operated amusement devices in various locations. The locations in which MCO places coin-operated amusement devices includes restaurants, bars and fraternal organization halls (collectively "Game Locations"). (A list of the Game Locations is attached as Exhibit D.)

MCO and Mirch have engaged an unlawful scheme to infringe RDI's intellectual property rights by using the Video Poker Games containing the copyrighted computer software without a license to do so. As part of the scheme, MCO and Mirch blatantly knocked off RDI's Video Poker Games, including the Enhancements, by copying the computer code onto computer chips and using the Knock-Off chips (the "Knock Offs") and selling or distributing the Knock Offs to businesses throughout Southeast Michigan.

## III. RDI's Prior Agreement With MCO and Mirch

In early 2007, MCO operated more than 120 Video Poker Games or Knock-Offs at various Game Locations in the State of Michigan. These Video Poker Games illegally incorporated the

Copyrighted Works, including the Enhancements, without a license to do so. RDI discovered that MCO and Mirch were engaged in the distribution of unauthorized, infringing Games.

RDI notified MCO and Mirch of their unlawful, infringing activities. MCO and Mirch acknowledged their unlawful, infringing activities, but desired to continue to distribute and operate the Video Poker Games. MCO and Mirch sought a license from RDI to do so. RDI was willing to license MCO and Mirch to use authorized versions of the Video Poker Games (the "Authorized Boards"), subject to a number of conditions and representations. These conditions and representations were set forth in a Lease Agreement, a Promissory Note, and a Guaranty executed by MCO and Mirch on or about April 7, 2007. (A copy of the Lease is attached as Exhibit E.)

MCO and Mirch were represented by attorney Neil Rockind (P-48618) in connection with the negotiation and execution of the Lease, Promissory Note and Guaranty. Among the representations, acknowledgements and undertakings made by MCO and Mirch are these:

a) MCO and Mirch acknowledged, in Sections 3.1 and 25 of the Lease, that, prior to the execution of the Lease, MCO operated unauthorized and infringing boards without a license.

b) MCO and Mirch acknowledged, in Section 10.2 of the Lease, the existence and validity of RDI's copyrights;

c) MCO and Mirch agreed, in Section 10.2 of the Lease, that they would not challenge the validity or enforceability of RDI's copyrights in any forum, judicial or otherwise, or before any tribunal, agency or otherwise.

d) MCO and Mirch agreed that MCO would replace its unauthorized and infringing boards with an equal number of Authorized Boards;

e) MCO and Mirch represented, in Section 1.1 of the Lease, that MCO operated 127 unauthorized boards prior to the execution of the Lease and that MCO would replace these boards with 127 Authorized Boards.

f) MCO and Mirch agreed, in Section 3.1 of the Lease, that MCO would turn over to

RDI at its sole expense all of its unauthorized boards.

g) MCO and Mirch agreed, in Section 4 of the Lease, that RDI could reclaim possession of the Authorized Boards upon any default by MCO, including without limitation, the failure to pay all amounts due under the Lease, Promissory Note, and Guaranty.

RDI leased 127 Authorized Boards to MCO. Each was identified by a separate serial and RDI number and placed into locations owned by MCO, Mirch or the unnamed Defendants. (A list of the serial and RDI numbers for each of the Authorized Boards delivered to MCO and Mirch is attached as Exhibit F.)

## IV.    Defendant's Infringing Activities

By August, 2007, MCO and Mirch were in material breach of their obligations to RDI. In January, 2008, RDI commenced a lawsuit against MCO and Mirch in the Oakland County Circuit Court, Case No. 08-088524-CK, asserting state law claims for breach of the Lease, unfair competition, fraud and tortious interference.

RDI also sought a preliminary injunction, and a hearing was scheduled for January 23, 2007, which among other things sought an injunction against MCO's further use of the Video Poker Games and the Authorized Boards, which MCO had obtained pursuant to the Lease.

To avoid the effects of an injunction, MCO and Mirch engaged in an unlawful conspiracy to copy the Copyrighted Works by making the Knock-Offs. MCO and Mirch purchased additional circuit boards with U9 chips that contained the Video Poker Games. (Exhibit G, Affidavit of Don Domek) Those boards and U9 chips were themselves knock-offs of authorized boards which had been originally obtained from Merit. (Exhibit G)

MCO and Mirch used a U9 chip to make the illegal Knock-Offs using an Eprom chip burner. (Exhibit G) To make the Knock-Offs, MCO and Mirch erased a compatible chip using an ultraviolet eraser. (Exhibit G; Exhibit H, Affidavit of Kevin Carson) Using the Eprom burner, MCO and Mirch then copied the Video Poker Game software program with the Enhancements onto

the compatible chip.  (Exhibit G; Exhibit H)

On January 21, 2008, MCO and Mirch instructed MCO employees, including Daniel Domek and Kevin Carson, to make Knock-Offs which could be used in the event that the Oakland County Circuit Court granted the preliminary injunction.  (Exhibit G; Exhibit H)  Mirch told the MCO employees to work quickly because MCO only had two days to burn replacement Knock-Off chips.  (Exhibit G)  Mirch explained to these employees that he had to take RDI's Authorized Boards to court and could not get caught with boards in his possession that contained any of the unauthorized Enhancements.  (Exhibit G)

The MCO employees worked continuously into the early hours of January 23, 2008, making the Knock Offs.  (Exhibit G)  The MCO employees then went to each of Mirch's Game Locations, removed RDI's Authorized Boards, and replaced them with the Knock-Off boards which they had just finished burning. (Exhibit G; Exhibit H)  Mirch then packaged the Authorized Boards into boxes and delivered them to the court on January 23, 2008. (Exhibit G)

Based on MCO's representations that it was turning RDI's Authorized Boards over to the custody of the Court, the Oakland County Circuit Court did not enter a preliminary injunction on January 23, 2008.  Since January 23, 2008, MCO and Mirch have continued to make, distribute and use Knock-Offs in order to avoid MCO's obligations under the Lease and to willfully infringe RDI's exclusive rights in the Copyrighted Works.

## V.    RDI's Damages

On average, one of the Video Poker Games operated by Mirch most likely generates over $1,000.00 per week, which equates to approximately $4,000.00 per machine per month, or $48,000.00 per machine per year.  Conservatively assuming that MCO has placed 150 Knock-Off boards into the stream of commerce, on information and belief, these infringing games have generated gross revenue in the range of as much as $6 million over the past three years.  Upon information and belief, Defendants have, in fact, placed a substantially larger number of games into Game Locations.

In addition to revenues from the distribution and operation of the Infringing Games, MCO and Mirch have most likely received revenues from the sale of Knock-Off boards to other distributors and operators. These infringing activities of MCO and Mirch are continuing through the present day.

**ARGUMENT**

**I.    THE COURT SHOULD GRANT RDI'S REQUEST FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION, TO STOP DEFENDANTS' ONGOING INFRINGEMENT OF RDI'S INTELLECTUAL PROPERTY RIGHTS IN ITS VIDEO POKER GAMES**

Defendants are violating numerous intellectual property and other rights of RDI, many of which are grounds for injunctive relief. Clear proof of the infringement of RDI's copyrights is presented in the Verified Complaint and the affidavitd of Daniel Domek and Kevin Carson.

RDI can satisfy the requirements for a preliminary injunction:

(A)    there is a strong likelihood that RDI will succeed on the merits;

(B)    RDI will suffer irreparable harm without the injunction;

(C)    Neither MCO nor Mirch will suffer any harm if an injunction issues because they have no right to counterfeit and knock-off RDI's intellectual property;

(D)    the public interest favors the protection of intellectual property, including copyrights and trademarks.

*Lorillard Tobacco Co. v. Amouri 's Grand Foods, Inc.*, 453 F.3d 377, 380 (6th Cir. 2006). These criteria "do not establish a rigid and comprehensive test for determining the appropriateness of preliminary injunctive relief...The four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met." *Frisch's Restaurant, Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985) (citations omitted).

### A.    *RDI Is Likely To Succeed On The Merits Of Its Claims.*

To establish a claim for copyright infringement, a plaintiff must show: (1) ownership of a

valid copyright and (2) copying of constituent elements of the work that are original. See *Frisch's Restaurant, Inc.*, 759 F.2d at 1263. Here, RDI can demonstrate ownership of valid copyrights in both the computer code and the audiovisual elements of the Video Poker Games, and can also demonstrate that those copyrighted works were copied by Defendants for commercial distribution in the "Knock-Off" versions.

a.   *RDI Owns Valid Copyrights in Both the Computer Code And Audiovisual Elements of the Video Poker Games*

RDI is the exclusive licensee in Michigan of the Video Poker Game computer programs. The computer programs have been registered with the United States Copyright Office. Computer programs are subject to copyright protection. *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1249 (3d Cir. 1983). This protection extends to computer programs for video games, as well. *See, e.g., Atari Games Corp. v. Nintendo of Amer., Inc.*, 975 F.2d 832, 838, 843-845 (9th Cir. 1992) (affirming grant of preliminary injunction for infringement of copyrighted computer program for video game); *Midway Mfg. Co. v. Strohon*, 564 F. Supp. 741, 749 (W.D.Ill. 1983) (citing *Williams Electronics, Inc. v. Artie International, Inc.*, 685 F.2d 870 (3d Cir. 1982) ("the computer program connected with a video game is protectible").

Additionally, valid copyrights may be obtained and enforced in the audiovisual elements of a video game, i.e., the "look and feel" of the game at the point of user interface - generally, the graphic and screen elements displayed on the computer monitor — as well as the "flow" of the game. See, e.g., *Nintendo of Amer., Inc v. Elcon Indus., Inc.*, 564 F. Supp. 937, 943 (ED. Mich. 1982) (citing 17 U.S.C. § 102(a)); *Stern Elec., Inc, v. Kaufman*, 669 F.2d 852, 855 (2d Cir. 1982); *Atari Games Corp. v. Oman*, 888 F.2d 878, 882 (D.C. Cir. 1989).

A certificate of copyright registration establishes a prima facie presumption that the copyright is valid and subsisting and that plaintiff is otherwise entitled to the protection afforded by law to the holder of a copyright."*Nintendo of Amer., Inc.*, 564 F.Supp. at 943, See also *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905 (2d Cir. 1980).

     b.     *Defendants are infringing RDI's copyrights in the Video Poker Games.*

Defendants have taken circuit boards and U9 chips containing RDI's copyrighted computer code and had Knock-Off copies made, which they distributed to their customers. This copying in and of itself constitutes copyright infringement.

There is direct evidence of Defendants' copying Plaintiffs code and Plaintiff's audiovisual copyright in the games' graphics. MCO and Mirch acknowledge, in Sections 3.1 and 25 of the Lease that, prior to the execution of the Lease, MCO operated unauthorized and infringing boards without a license. (Exhibit E)

In addition, after RDI sued Mirch and MCO for violating the terms of the Lease, Mirch admitted to his employees that he had made illegal copies of the Copyrighted Works and, when ordered to bring the Authorized Boards to court last January, specifically instructed his employees, including Don Domek and Kevin Carson, days before the court appearance, to burn additional illegal copies of RDI's Video Poker Games to replace the Authorized Boards. (Exhibit G; Exhibit H)

Mr. Domek has stated in his Affidavit that he and other MCO employees worked through the night burning Knock Off chips, and placed them into circuit boards that they substituted for the Authorized Boards, just hours before Mirch turned over the Authorized Boards to the Oakland County Circuit Court.

Thus, the evidence clearly shows that Defendants have taken RDI's code and made unauthorized copies. By copying and distributing the Video Poker Games containing RDI's code, Defendants are plainly infringing on RDI's rights.

## B.    *Riviera Will Suffer Irreparable Harm If A TRO and Preliminary Injunction Is Not Issued.*

RDI is in desperate need of a TRO, without prior notice to the Defendants, because there is direct evidence that MCO and Mirch are still aggressively infringing on RDI's copyrights by creating the Knock Offs and are deliberately attempting to cover their tracks by destroying and

concealing evidence of infringement. These Defendants create the Knock Offs in large quantities, with relative ease, in fearless disregard of RDI's rights. If the Court does not immediately order ex-parte injunctive relief, there is no question that RDI will suffer severe and irreparable injury because MCO and Mirch will continue diluting the market with their counterfeit boards and chips. If the Defendants are given advance notice, they will very easily be able to hide the devices used to create the Knock Offs, like the Eprom burner, the ultraviolet eraser and compatible U9 chips. Indeed, as stated in the Affidavits of Domek and Carson, Mirch has no qualms about covering his tracks, and is quite diligent in doing so. (Exhibit G; Exhibit H)

Moreover, in a copyright case, a plaintiff establishes a rebuttable presumption of irreparable harm simply by showing that a valid copyright has been infringed. A defendant cannot even rebut the presumption of irreparable harm by showing the adequacy of monetary damages. *Cadence Design Systems, Inc. v. Avant! Corp.*, 125 F.3d 824, 827 (9th Cir.1997); 4 *Nimmer on Copyright*, § 14.06[A], at 14-105 (1997). As the Ninth Circuit explained in *Cadence Design Systems*, 125 F.3d at 823:

> . . . "it is well settled that the availability of money damages does not rebut the presumption of irreparable harm in copyright cases." Cadence cites several appeals court decisions for support, including: *Triad*, 64 F.3d at 1335 (holding that the presumption of irreparable harm supported the district court's preliminary injunction order); *Johnson Controls, Inc. v. Phoenix Control Sys., Inc.*, 886 F.2d 1173, 1174 (9th Cir.1989) (same); *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1254 (3d Cir.1983) (holding that the district court erred when it failed to consider the presumption of irreparable harm); and *Atari, Inc. v. North Am. Philips Consumer Elecs. Corp.*, 672 F.2d 607, 620-21 (7th Cir.1982) (reversing the district court's finding of non- infringement and directing the district court to enter a preliminary injunction based upon the presumption of irreparable harm).
>
> * * *
>
> Commentator Nimmer supports this result. Nimmer writes that if a plaintiff establishes a likelihood of success on the merits of a copyright infringement claim, "it would seem erroneous to deny a preliminary injunction simply because actual damages can be precisely calculated...." 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.06[A], at 14-105 (1997); *see also American Direct Mktg., Inc. v. Azad Int'l, Inc.*, 783 F.Supp. 84, 96 (E.D.N.Y.1992) (noting that in the Second and Ninth Circuits, "a *828 finding of likelihood of success on the merits automatically triggers a preliminary

- 10 -

injunction, and failure to issue one is reversible error if the validity of the copyright and existence of copying are not at issue"); *Concrete Mach. Co.,* 843 F.2d at 612 (discussing the presumption of irreparable harm and stating that "[t]here is ... no need actually to prove irreparable harm when seeking an injunction against copyright infringement").

"In the copyright context, much rests on the first factor [of the preliminary injunction test] because irreparable harm is presumed once a likelihood of success has been established...and because an injunction likely will serve the public interest once a claimant has demonstrated a likelihood of success in this setting." *Lexmark Intl. Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 532-33 (6th Cir. 2004).

Here, RDI has demonstrated a strong likelihood of success on the merits of its copyright claims. Therefore, irreparable harm in the absence of an injunction, which is an absolute certainty given the facts of this case, should also be presumed.

Based upon Mirch's admissions in the Lease and the affidavits of Domek and Carson, it is clear that Mirch has no compunction about infringing upon RDI's rights. An inspection of Defendants' premises would most certainly reveal numerous infringing items. Issuing notice prior to the issuance of a TRO and/qr an order of inspection and seizure would merely give them an opportunity to dispose of evidence in an attempt to further cover their tracks. It is therefore clear that an ex-parte TRO freezing the disposition of all Video Poker Games, U9 chips, circuit boards, Defendants' Eprom burner, and their ultraviolet eraser is necessary, at the very least, against all Defendants; and that an order of seizure, at least as against Mirch and MCO is very likely necessary to prevent irreparable harm to RDI.

## C.   *The Public Interest Will Be Best Served By The Issuance Of A TRO And Preliminary Injunction.*

The public interest can only be served by upholding copyright protections and, correspondingly, preventing misappropriation of the skills, creative energies, and resources which are invested in the protected work. *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983); . Here, because RDI has demonstrated a strong likelihood of success on the merits of its copyright infringement claims, the public interest will be served by the issuance of

a TRO and preliminary injunction.

**D.    *Granting Of The TRO and Preliminary Injunction Will Not Cause Substantial Harm To Others***

"The question of whether an injunction would cause substantial harm to others, including [Defendants], is of questionable relevance here, where it appears particularly likely that [Defendants are] infringer[s]." *Bird Brain, Inc v. Menard Inc.*, 2000 U.S. Dist. LEXIS 11668, *26 (W.D. Mich., Aug. 4, 2000), citing *Concrete Machinery*, 843 F.2d at 612 (noting the "questionable relevance" of the balance of hardships factor to the determination of whether a likely infringer should he preliminarily enjoined). Given that RDI has demonstrated that the other preliminary injunction factors weigh in its favor (including the primary factor of likelihood of success on the merits), the possibility that Defendants, admitted copyright infringers, will be preliminarily enjoined from continuing to benefit from their infringing conduct, is not particularly relevant and is not a basis to deny RDI the injunctive relief to which it has established its entitlement.

**II.    THE COURT SHOULD GRANT RDI'S REQUEST FOR AN ORDER OF IMPOUNDMENT AUTHORIZING THE SEIZURE AND STORAGE OF ALL INFRINGING COPIES AND THE DEVICES USED BY DEFENDANTS TO CREATE THEM**

Under 17 U.S.C. § 503(a), this Court may order that the Knock Offs, including all video poker games, circuit boards, and U9 chips "claimed to have been made or used in violation of the copyright owner's exclusive rights," and the devises used by Defendants to create them be impounded. Impoundment is intended to ensure the eventual destruction of the infringing articles when RDI prevails in this lawsuit. *First Technology Safety Systems, Inc. v. Depinet*, 11 F.3d 641, 649 (6th Cir. 1993). This Court may order impoundment because RDI has demonstrated its entitlement to preliminary injunctive relief. *WPOW, Inc. v. MRLJ Enters.*, 584 F. Supp. 132, 135 (D.C. D.C. 1984). Impoundment, which generally is sought on an *ex parte* basis and is particularly suited for video game "piracy" lawsuits, is proper even where other injunctive relief has issued.[1]

---

[1]    Fed.R.Civ.P. 65, which sets forth the standards governing the issuance of

As explained by Nimmer:

> Impoundment may be and usually is sought provisionally. Such relief most often is granted in "piracy" actions involving widespread duplication or marketing of counterfeit merchandise such as audio and video recordings, video games and other software, and toys. Although a TRO may seem sufficient to prevent the defendant from disposing of infringing materials, sometimes a suspect defendant may be disposed to ignore a TRO.

> Although impoundment may issue "at any time" while the action is pending, it is almost always requested at the outset of suit. The reason is that the element of surprise is essentially for a successful impoundment. If a lawsuit already is pending, the defendant is on notice and, if so inclined, may make it difficult to locate and identify allegedly infringing merchandise. For the same reason, impoundment applications are almost always *ex parte,* without notice to the defendant.

6 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 35.05 (2006).

As explained above, RDI is entitled to injunctive relief to prevent MCO and Mirch from continuing their bold and irreverent infringing conduct. RDI is also entitled to impoundment of all of the infringing video poker games, circuit boards, U9 chips, and other infringing materials in these Defendants' possession, specifically including, but not limited to, the Eprom burner and ultraviolet eraser. The Defendants have in their possession video poker games and other materials that infringe upon the Copyrighted Works, which must be destroyed if and when RDI ultimately succeeds on the merits of this copyright infringement action.

## CONCLUSION

The Court should issue a TRO,  preliminary injunction, and order  for seizure and impoundment of infringing goods, which (1) enjoins future knock-offs and (2) prevents MCO and Mirch from using the existing knock-offs; (3) orders Defendants to deliver to the Court all "knock-offs" and the devices which Defendants used to make the "knock-offs," and (4) authorizes the seizure and storage of all infringing goods and materials in the possession of Defendants used to create the infringing goods.

---

preliminary injunctions and TROs, expressly applies to copyright impoundment proceedings. Fed.R.Civ.P. 65(f).

STEPHEN F. WASINGER PLC

By: ___ /s/ Stephen Wasinger _____
       Stephen Wasinger (P25963)
300 Balmoral Centre
32121 Woodward Avenue
Royal Oak, MI 48073
Tel:  (248) 554-6306
Fax: (248) 479-0391
sfw@sfwlaw.com

      And

ANTHONY L. DELUCA, PLC

By:___ /s/ Anthony DeLuca _____
       Anthony L. DeLuca (P64874)
14950 East Jefferson Avenue, Suite 170
Grosse Pointe Park, MI 48230
Tel: (313) 821-5905
Fax: (313) 821-5906
anthony@aldplc.com

Dated:  March 18, 2008

# EXHIBIT A

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Form TX**
For a Nondramatic Literary Work
UNITED STATES COPYRIGHT OFFICE

TX 6-062-022

EFFECTIVE DATE OF REGISTRATION

Dec 15 2004
Month   Day   Year

---

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE USE A SEPARATE CONTINUATION SHEET

**1** TITLE OF THIS WORK ▼
Americana Poker Program for CRT 260

PREVIOUS OR ALTERNATIVE TITLES ▼

PUBLICATION AS A CONTRIBUTION If this work was published as a contribution to a periodical, serial, or collection give information about the collective work in which the contribution appeared.   Title of Collective Work ▼

If published in a periodical or serial give   Volume ▼   Number ▼   Issue Date ▼   On Pages ▼

---

**2**
**a** NAME OF AUTHOR ▼
Merit Industries, Inc

DATES OF BIRTH AND DEATH
Year Born ▼   Year Died ▼

Was this contribution to the work a work made for hire?
☑ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶
Domiciled in ▶ United States

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?   ☐ Yes ☑ No
Pseudonymous?   ☐ Yes ☑ No
If the answer to either of these questions is Yes, see detailed instructions.

**NOTE**
Under the law, the author of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was made for hire check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼
Entire Text

**b** NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼   Year Died ▼

Was this contribution to the work a work made for hire?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?   ☐ Yes ☐ No
Pseudonymous?   ☐ Yes ☐ No
If the answer to either of these questions is Yes, see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼

**c** NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼   Year Died ▼

Was this contribution to the work a work made for hire?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?   ☐ Yes ☐ No
Pseudonymous?   ☐ Yes ☐ No
If the answer to either of these questions is Yes, see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼

---

**3**
**a** YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED This information must be given in all cases.
1988 ◄ Year

**b** DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK Complete this information ONLY if this work has been published.
Month ▶ 01   Day ▶ 1   Year ▶ 1993
United States   ◄ Nation

---

**4** COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2 ▼
Riverie Distributors Inc
414 Hamilton Blvd  Suite 301
Peoria Illinois 61602

TRANSFER If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright ▼
Assignment

APPLICATION RECEIVED
DEC 15 2004
ONE DEPOSIT RECEIVED
DEC 15 2004
TWO DEPOSITS RECEIVED

FUNDS RECEIVED

---

MORE ON BACK ▶   Complete all applicable spaces (numbers 5-9) on the reverse side of this page.   See detailed instructions.   Sign the form at line 8

DO NOT WRITE HERE
Page 1 of ___ 2 ___ pages

Amended by CO from call to Sean Swidler on 12/22/04

| EXAMINED BY | _[signature]_ | FORM TX |
|---|---|---|
| CHECKED BY | | |
| ☐ CORRESPONDENCE Yes | | FOR COPYRIGHT OFFICE USE ONLY |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET**

**5** PREVIOUS REGISTRATION Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☑ Yes  ☐ No  If your answer is Yes, why is another registration being sought? (Check appropriate box.) ▼
a ☐ This is the first published edition of a work previously registered in unpublished form.
b ☐ This is the first application submitted by this author as copyright claimant.
c ☑ This is a changed version of the work, as shown by space 6 on this application.
If your answer is Yes, give: Previous Registration Number ▶ See attached  TX 1-423-047  Year of Registration ▶ See attached  1984

**6** DERIVATIVE WORK OR COMPILATION
a  Preexisting Material Identify any preexisting work or works that this work is based on or incorporates ▼

Previous program by author

b  Material Added to This Work Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

Additional new text and revisions

**7** a  DEPOSIT ACCOUNT If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
Name ▼                                    Account Number ▼

b  CORRESPONDENCE Give name and address to which correspondence about this application should be sent.   Name/Address/Apt/City/State/ZIP ▼
Sean S Swidler / Pattak Frank & Samotny Ltd
150 S Wacker Drive Suite 900
Chicago, Illinois 60606

Area code and daytime telephone number ▶ 312/551 8300          Fax number ▶ 312/551 1101
Email ▶   sswidler@pfs law com

**8** CERTIFICATION* I, the undersigned, hereby certify that I am the
Check only one ▶
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☑ authorized agent of ___Claimant___
Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.
Sean S Swidler                                    Date ▶ December 14, 2004

Handwritten signature (X) ▼
X _[signature]_

**9** Certificate will be mailed in window envelope to this address
Name ▼
Sean S Swidler / Pattak Frank & Samotny Ltd
Number/Street/Apt ▼
150 S Wacker Drive Suite 900
City/State/ZIP ▼
Chicago Illinois 60606

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.
Rev July 2003—xxx   Web Rev July 2003   ☺ Printed on recycled paper                                    U.S. Government Printing Office 2003-461 113/020 021

# EXHIBIT B

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Form TX**
For a Nondramatic Literary Work
UNITED STATES COPYRIGHT OFFICE

TX 5-882-823

EFFECTIVE DATE OF REGISTRATION

12  15  04

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET**

**1**

**TITLE OF THIS WORK ▼**
Americana Dodge City Poker Program for CRT 250

**PREVIOUS OR ALTERNATIVE TITLES ▼**

**PUBLICATION AS A CONTRIBUTION** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared.    Title of Collective Work ▼

If published in a periodical or serial give   Volume ▼      Number ▼         Issue Date ▼        On Pages ▼

**2**

**a**

**NAME OF AUTHOR ▼**
Merit Industries, Inc

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a work made for hire?
☒ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ _____
Domiciled in ▶ **United States**

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?     ☐ Yes ☒ No    If these questions is
Pseudonymous?  ☐ Yes ☒ No    "Yes," see detailed instructions

**NOTE**

Under the law, the author of a work made for hire is generally the employer not the employee (see instructions). For any part of this work that was made for hire check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part and leave the space for dates of birth and death blank.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed ▼
Entire Text

**b**

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a work made for hire?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ _____
Domiciled in ▶ _____

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?     ☐ Yes ☐ No    If the answer to either of these questions is
Pseudonymous?  ☐ Yes ☐ No    "Yes," see detailed instructions

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed ▼

**c**

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a work made for hire?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ _____
Domiciled in ▶ _____

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?     ☐ Yes ☐ No    If the answer to either of these questions is
Pseudonymous?  ☐ Yes ☐ No    "Yes," see detailed instructions

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed ▼

**3**

**a**

**YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED** This information must be given ◀ Year in all cases.
1988

**b**

**DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK** Complete this information ONLY if this work has been published.
Month 22  02   Day 2  21   Year 1988  1990    **United States**    ◀ Nation

**4**

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2 ▼
Riverna Distributors, Inc
414 Hamilton Blvd , Suite 301
Peoria, Illinois 61602

**TRANSFER** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright ▼
Assignment

APPLICATION RECEIVED
DEC 15 2004
ONE DEPOSIT RECEIVED
DEC 15 2004
TWO DEPOSITS RECEIVED

FUNDS RECEIVED

**MORE ON BACK ▶** Complete all applicable spaces (numbers 5-11) on the reverse side of this page.
See detailed instructions.    Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of __2__ pages

"Amended by CO from call to Sean Swidler on 12/22/04

| | |
|---|---|
| EXAMINED BY | W.h.D |
| CHECKED BY | |
| ☐ CORRESPONDENCE ☐ Yes | |

FORM TX

FOR
COPYRIGHT
OFFICE
USE
ONLY

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET**

## 5

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes ☐ No If your answer is Yes, why is another registration being sought? (Check appropriate box.) ▼
a ☐ This is the first published edition of a work previously registered in unpublished form.
b ☐ This is the first application submitted by this author as copyright claimant.
c ☑ This is a changed version of the work, as shown by space 6 on this application.
If your answer is Yes, give: Previous Registration Number ▶ See attached *TX 1-425-047 Year of Registration ▶ See attached *1984

## 6

**DERIVATIVE WORK OR COMPILATION**
Preexisting Material Identify any preexisting work or works that this work is based on or incorporates ▼

a
Previous program by author

b
Material Added to This Work Give a brief, general statement of the material that has been added to this work and in which copyright is claimed ▼

Additional new text and revisions

## 7

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
Name ▼                                    Account Number ▼

a

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent   Name/Address/Apt/City/State/ZIP ▼

b
Sean S Swidler / Patzik, Frank & Samotny Ltd
150 S Wacker Drive, Suite 900
Chicago, Illinois  60606

Area code and daytime telephone number ▶ 312/551-8300                    Fax number ▶ 312/551-1101
Email ▶ sswidler@pfs-law com

## 8

**CERTIFICATION*** I the undersigned, hereby certify that I am the
Check only one ▶
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☑ authorized agent of  Claimant
Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made
by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.
Sean S Swidler                                                    Date ▶ December 14, 2004

Handwritten signature (X) ▼
X

## 9

Certificate
will be
mailed in
window
envelope
to this
address

| |
|---|
| Name ▼ |
| Sean S Swidler / Patzik, Frank & Samotny Ltd |
| Number/Street/Apt ▼ |
| 150 S Wacker Drive, Suite 900 |
| City/State/ZIP ▼ |
| Chicago, Illinois  60606 |

17 U S C § 506(e) Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Rev July 2003—xxx   Web Rev July 2003   ℗ Printed on recycled paper                    U S Government Printing Office 2000-461 113/20 001

# EXHIBIT C

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Form PA**
For a Work of Performing Arts

**PA 1-340-639**

EFFECTIVE DATE OF REGISTRATION

Month 11 Day 13 Year 06

---

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET

**1** TITLE OF THIS WORK ▼

RIVIERA AMERICANA VIDEO POKER GAME

PREVIOUS OR ALTERNATIVE TITLES ▼

NATURE OF THIS WORK ▼ See instructions

Audiovisual Work

**2** a NAME OF AUTHOR ▼

Merit Industries, Inc

DATES OF BIRTH AND DEATH
Year Born ▼ Year Died ▼

Was this contribution to the work a work made for hire?
☒ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR Citizen of _____
Domiciled in U.S.A.

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☒ No
Pseudonymous? ☐ Yes ☒ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed ▼
All Audiovisual Elements

**NOTE**
Under the law the author of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was made for hire check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

b NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼ Year Died ▼

Was this contribution to the work a work made for hire?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR Citizen of _____
Pseudonymous? _____

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed ▼

c NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼ Year Died ▼

Was this contribution to the work a work made for hire?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR Citizen of _____
Domiciled in _____

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed ▼

**3** a YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED This information must be given in all cases.
1987 Year

b DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK
Complete this information ONLY if this work has been published.
Month February Day 08 Year 1988
Nation United States of America

**4** COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2 ▼

Riviera Distributors Inc
414 Hamilton Blvd Suite 301
Peoria, IL 61602

TRANSFER If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright ▼

Via written assignment

APPLICATION RECEIVED
NOV 1 3 2006
ONE DEPOSIT RECEIVED
NOV 1 3 2006
TWO DEPOSITS RECEIVED

FUNDS RECEIVED
V/f

---

MORE ON BACK ▶ Complete all applicable spaces (numbers 5-9) on the reverse side of this page. See detailed instructions. Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of ____ pages

| EXAMINED BY | *N.L.* | FORM PA |
|---|---|---|
| CHECKED BY | | |

☐ CORRESPONDENCE
  Yes

FOR
COPYRIGHT
OFFICE
USE
ONLY

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work or for an earlier version of this work, already been made in the Copyright Office?

☐ Yes ☐ No  If your answer is Yes, why is another registration being sought? (Check appropriate box) ▼ If your answer is No, do not check box A, B or C

a ☐ This is the first published edition of a work previously registered in unpublished form.

b ☐ This is the first application submitted by this author as copyright claimant.

c ☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is Yes, give: Previous Registration Number ▼          Year of Registration ▼

**5**

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a and 6b for a derivative work; complete only 6b for a compilation.

Preexisting Material Identify any preexisting work or works that this work is based on or incorporates ▼

**a**

See instructions
before completing
this space

Material Added to This Work Give a brief, general statement of the material that has been added to this work and in which copyright is claimed ▼

**b**

**6**

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account
Name ▼                                           Account Number ▼

Jaffe, Raitt, Heuer & Weiss          DA92790

**a**

**7**

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/Zip▼

Peter M Falkenstein / Jaffe Raitt Heuer & Weiss PC
201 S Main St  Suite 300
Ann Arbor  Michigan 48104

**b**

Area code and daytime telephone number   ( 734  )  222-4776          Fax number  ( 734  ) 222-4769

Email   pfalkenstein@jaffelaw.com

**CERTIFICATION**  I, the undersigned, hereby certify that I am the                ☐ author

Check only one ▶            ☐ other copyright claimant

                            ☐ owner of exclusive right(s)

                            ☒ authorized agent of  Riviera Distributors  Inc

                            Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

**8**

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Larry L Hartley                                                    Date  11/9/2006

Handwritten signature (X) ▼

X  *Larry L Hartley*

Certificate
will be
mailed in
window
envelope
to this
address

| Name ▼ |
|---|
| Peter M Falkenstein / Jaffe Raitt Heuer & Weiss PC |
| Number/Street/Apt ▼ |
| 201 S  Main St  Suite 300 |
| City/State/Zip ▼ |
| Ann Arbor  Michigan 48104 |

**9**

17 USC §506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection
with the application, shall be fined not more than $2,500.

# EXHIBIT D

Oakland County - Monroe - Ohio

Full Route List

Oakland County - Monroe - ...

| | Contact Name | Cell/Home Number | Business Number | City | State | Address | Zip |
|---|---|---|---|---|---|---|---|
| **Monroe** | | | | | | | |
| Clamdiggers | Glen | (734) 735-6788 | (734) 243-2626 | MONROE | MI | 1540 E ELM AVE | 481? |
| Pirates Landing | | | (734) 457-1777 | MONROE | MI | 1530 E Elm Ave | 481? |
| Side Track Saloon | | | (734) 243-8615 | MONROE | MI | 1025 E Elm Ave | 481? |
| Whistle Shop. | | | (734) 242-0014 | MONROE | MI | 201 W FRONT | 481? |
| Cone and Cues | Keith/Steve/Doc | | (734) 241-6533 | MONROE | MI | 308 N. Telegraph | 481? |
| Lassia Bar | Jim Termail | (734) 652-3407 | 734-243-9621 | La Salle | MI | 12967 S Dixie Hwy | 481? |
| Monroe Moose 884 | | | (734) 241-3554 | MONROE | MI | 1320 N. Macomb St | 481? |
| Next Door Lounge | Keith | | (734) 687-2333 | MONROE | MI | 12987 S Dixie Hwy | 481? |
| Little Brown Jug | | | (734) 587-2343 | MAYBEE | MI | 7717 BLUEBUSH RD | 481? |
| Joes Walnut Bar | | | (734) 587-2343 | MAYBEE | MI | 7697 BLUE BUSH RD | 481? |
| C/s Smoke Shop 1 | | | (734) 279-2099 | PETERSBURG | MI | 45 E CENTER | 4927 |
| C/s Smoke Shop 2 | | | | | | | |
| Motel Lounge | | | | | | | |
| Grafton Inn | John Imo | (734) 777-1114 | (734) 457-9770 | Canton | MI | 49351 Michigan Ave | 481? |
| Beck's Den | Abe | (734) 625-0084 | (734) 654-2001 | CARLETON | MI | 12601 GRAFTON RD | 4811 |
| Venice Bar | Kelly | (734) 286-8878 | (734) 286-8878 | NEWPORT | MI | 7101 N Dixie Hwy | 481? |
| Street Bay Gun Club | Tom | (734) 735-4322 | (734) 586-7272 | NEWPORT | MI | 7900 N DIXIE HWY | 481? |
| Jerry's Frenchtown Bar | Brian | (734) 625-6093 | | | | | |
| **Monroe Eagles.** | | | (734) 289-9678 | MONROE | MI | 2822 N DIXIE | 481? |
| **Ohio** | | | | | | | |
| Oar House | | | (419) 729-9004 | Toledo | OH | 5044 Suder Ave | 436? |
| V.F.W. Maumee | Rick | (419) 304-3778 | (419) 697-4605 | Toledo | OH | 817 2nd St | 430? |
| Major Magics | Ray/Rocky | | (419) 865-1400 | Synania | OH | 5836 Monroe St | 435? |
| Sports Center | | | (419) 476-4388 | Toledo | OH | 2114 W Alexis Rd | 436? |
| Sports Zone | John | (419) 720-0318 | (419) 474-7611 | Toledo | OH | 5001 Monroe St | 436? |
| Playmakers | John | (419) 720-0318 | (419) 720-0317 | Toledo | OH | 2600 Sylvania Avenue | 4361 |
| Bowling Alley | | | | | | | |
| **Oakland County** | | | | | | | |
| Grafton Bar | Tom | | (248) 332-3383 | Pontiac | MI | 93 E Montcalm St | 483? |
| Auburn Sportsmans Bar | Fred | | (508) 254-2906 | Utica | MI | 46858 Dequindre | 483? |
| Burton Jakes | Amy | (248) 330-0455 | (248) 293-8000 | Rochester Hills | MI | 1711 E Auburn Rd | 483? |
| Locker Room Saloon | Wendy | | (586) 731-3362 | Utica | MI | 7780 Auburn Rd | 483? |
| U.'s Hideaway | AL | | (586) 731-1120 | Sterling Height | MI | 43120 Van Dyke Ave | 4831 |
| Julie Thai - Rochester | | | (248) 844-4800 | Rochester Hills | MI | 54 W Auburn Rd | 4831 |
| Oakland County Boat House | | | (248) 682-8970 | Sylvan Lake | MI | 2330 Ferndale St | 482? |
| Post Novi | | | (248) 465-0500 | Novi | MI | 42875 Grand River Ave | 4?? |
| Post Auburn Hills | | | (248) 370-9609 | Auburn Hills | MI | 3660 Lapeer Road | 483? |
| Santa Maria Bistro | | | (248) 589-9600 | Madison Heights | MI | 350 E 14 Mile Rd | 480? |

| | Road | Crossroad |
|---|---|---|
| Hill Road Market | Hill rd. | |
| Three G's Bar | Dort Hwy. | Saginaw rd |
| Great Lakes Party Store | Dort Hwy. | Atherton |
| Tony K's Market | Fenton Rd. | Atherton |
| Dollar Zone | Saginaw Rd. | |
| Shamrocks Tavern | 6340 N. Genesee Road | |
| Silvia Jo's Wagon Wheel | 3513 Richfield Rd. | |
| Dollar Store Franklin | 2818 N Franklin Ave | |
| Mountain Inn | 8078 N Dort Hwy | |
| Flushing dollar store | flushing rd | Next to family dollar |
| Sabas Mini Mart | 701 W Stewart Ave | |
| Dayton food Market | dupont | |
| Valley Bar | Corunna Rd. | |
| Tubbys Pub | 1301 Kosciuszko Ave | |
| Paplos | 2280 S Reese Rd | |
| FOE | 7078 Gratiot Rd | |
| American Legion | 5190 Weiss St | |
| Rumors | 1403 State St | |
| American Legion | 4314 W Carpenter Rd | |
| FOE | 3600 Carrollton Rd | |
| Carrollton Bar | | |
| Clio Eagles | 13267 N Saginaw Rd | |
| Woodshed | 13515 N Genesee Rd | |
| Alexanders | 417 S Michigan Ave, | |
| Paddock | 2921 Hess Ave | |
| Legends | 4142 W Michigan Ave | |
| Eagles | 11416 Vienna Rd | |
| American Legion | 219 N Main St | |
| Aloha Lounge | 219 N Main St | |
| Pacheyderm Pub | 3498 E Bristol Rd | |
| Kanes Car Club | 111 N Saginaw St | |
| | | |
| Snoopys | 2010 Saint Clair River Dr | |
| Marwood | 6062 River Rd | |
| Boomers Tavern | 35005 Bordman Rd | |
| Munchines Bar | 7291 Dyke Rd | |
| | | |
| West fort bar and grill | 7642 W Fort St | |
| Hard Luck lounge | 15410 Mack Ave | |
| Brads tavern | Warren rd | |
| club celebrity | 14421 Plymouth Rd | |
| Club Temptation | 8203 W Chicago | |
| Saabs bar | 3171 2nd Ave | |
| Sala Thai | 3400 Russell St # 105 | |

| | | |
|---|---|---|
| The Sting | michigan ave | Detroit |
| Mandees | Conant | detroit |
| Centerfold | John R | Detroit |
| Club Rolex | 5311 E Outer Dr | Detroit |
| Inuendo | 744 E Savannah St | Detroit |
| Verdells | Plymouth | Detroit |
| mr. B's Golden Apple | 9429 Hubbell St | Detroit |
| Smalls | 10339 Conant St | Hamtramck |
| Palimino Club | Fort street | Detroit |
| Club Cartier | 8124 Fullerton St | Detroit |
| | | |
| Cheetahs | 5910 S Pennsylvania Ave | Lansing |
| Coscarellies | 2400 S Cedar St | Lansing |
| Auggies | 820 W Miller Rd | Lansing |
| Pinetree Tavern | 1110 Page Ave | Jackson |
| American Legion | Prospect ave | Jackson |
| Timeout Bar | 2804 E Michigan Ave | Jackson |
| Mobile lounge | Michigan ave | Canton |

# EXHIBIT E

## LEASE AGREEMENT

This lease agreement (the "Agreement"), made this 9th day of April 2007, is between RDI of Michigan, LLC ("Lessor") and Michigan Coin-Op Vending, Inc. ("Lessee"), whose address is 1898 Larchwood, Ste. C, Troy, MI 48083, and Jordan Mirch ("Guarantor"), whose address is 1654 Greenwich Dr., Troy, MI 48098.

WHEREAS, Lessor is the exclusive distributor of Merit video poker game boards utilizing computer code and audio visual elements registered with the United States Copyright Office as Copyright Registration Nos. TX-6-062-022 and TX-6-062-023 and PA-1-340-639 (sometimes the "Authorized Boards" or "Authorized Board");

WHEREAS, Lessee and Guarantor acknowledge Lessor's exclusive rights in the Authorized Boards;

WHEREAS, Lessee desires to replace its unauthorized Merit game boards (the "Unauthorized Boards") with Authorized Boards in consideration for Lessor conditionally releasing Lessee from all past and present infringement claims that Lessor may have against Lessee for using the Unauthorized Boards and for the right to lease the Authorized Boards from Lessor;

WHEREAS, Lessee desires to lease Authorized Boards from Lessor in accordance with the covenants, terms and conditions set forth in this Agreement; and

WHEREAS, Guarantor agrees to guaranty the obligations of Lessee under this Agreement.

### SECTION 1. EQUIPMENT AND RENT

1.1 The Lessee represents that the number of unauthorized Boards it operated prior to the execution of this Agreement is 120. Lessee shall lease from Lessor under this Agreement the number of Authorized Boards equal to the number of its Unauthorized Boards.

1.2 Subject to the terms and conditions of this Agreement, Lessor leases to Lessee the number of Authorized Boards equal to the rent of (i) $750 per Authorized Board to be paid upon execution of this Agreement (the "Initial Charges") payable in accordance with Section 1.3 and (ii) $4 per Authorized Board per day paid weekly (the "Weekly Charges") commencing 7 days after the Authorized Boards are delivered to Lessee (the Effective Date").

1.3 The Lessee shall pay Lessor a down payment equal to 20% of the Initial Charges (i.e., the number of Authorized Boards times $750 times 20%). The balance of the Initial Charges shall be paid by Lessee to Lessor in accordance with the Promissory Note attached hereto as **Exhibit A**, which shall be secured by the Guaranty Agreement attached hereto as **Exhibit B**.

1.4 The Lessee shall pay Weekly Charges to Lessor equal to $4 per day times the number of Authorized Boards delivered to Lessee. However, in the calculation to determine the Lessee's Weekly Charges, Lessee may reduce the number of Authorized Boards subject to the Weekly Charge by 5% to cover Authorized Boards not immediately put in service or otherwise. For illustrative purposes, if the Lessee leases 100 Authorized Boards from Lessor, its Weekly Charges shall be 95 Authorized Boards times $4 per day times 7 days, or $2,660 per week.

### SECTION 2. TERM OF LEASE

2.1 Each Authorized Board shall have an initial lease term of 36 months after the Effective Date.

2.2 Either party may terminate this Agreement at the end of such initial term, provided 30 days prior written notice is received; otherwise each Authorized Board shall remain subject to this Agreement, and the term shall be extended for an additional year.

### SECTION 3. DELIVERY OF EXISTING MERIT BOARDS

3.1 Lessee agrees and represents that, prior to the execution of this Lease, Lessee operated Unauthorized Boards. Lessor is relying on Lessee's representation as to the number of Unauthorized Boards it operated prior to the execution of this Lease, as set forth in Section 1.1. If this representation is false, it shall constitute a breach of this Agreement.

3.2 Lessee agrees to deliver to Lessor at its sole expense all of its Unauthorized Boards within 30

days of the Effective Date, unless otherwise consented to by Lessor.

## SECTION 4. LESSOR'S RIGHT TO TERMINATION

Lessor may immediately terminate this Agreement and reclaim possession of the Authorized Boards leased upon any default by Lessee, including, without limitation, the failure promptly to pay all amounts due under this Agreement.

## SECTION 5. COMMERCIAL, NOT CONSUMER TRANSACTION

Lessee represents and agrees that Lessee is in the amusement game business, and the Authorized Boards are being leased for commercial or business purposes only, and not for personal, home or family purposes and in accordance with Michigan law. This transaction is not (and shall not be deemed to be) a consumer transaction.

## SECTION 6. LIMITATION OF USE

6.1    Authorized Boards leased under this Agreement shall be restricted solely and exclusively to Lessee or Lessee's direct customers.

6.2    Lessee shall have no right to transfer an Authorized Board to a third party, whether by sale, lease, assignment or otherwise.

## SECTION 7. MAINTENANCE

7.1    Lessor will be responsible for keeping the Authorized Boards in good working order and making all necessary adjustments, parts replacements, and repairs.

7.2    Lessor shall have full and free access to the Authorized Boards at all times.

## SECTION 8. WARRANTY

8.1    Lessor warrants each Authorized Board will be in good working order on the Effective Date.

8.2    So long as Lessee is not in default under the terms of this Agreement, Lessor shall cause to be made all necessary adjustments, repairs and replacements necessary to maintain the Authorized Boards in good working order.

8.3    Lessor's obligation is limited to repair or replacement of any parts or items of Authorized Board when Lessor determines that they do not conform to this warranty.

8.4    THE WARRANTY STATED IN SECTIONS 8.1, 8.2 AND 8.3 ARE IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, AND OF ALL OBLIGATIONS OR LIABILITIES ON THE PART OF LESSOR FOR DAMAGES, INCLUDING, BUT NOT LIMITED TO, CONSEQUENTIAL DAMAGES, ARISING OUT OF OR IN CONNECTION WITH THE USE OR PERFORMANCE OF THE AUTHROIZED BOARDS.

## SECTION 9. ALTERATIONS

Lessee shall may not alter or disassemble an Authorized Board under any circumstances.

## SECTION 10. NO SALE OF SOFTWARE AND COMPUTER CODE

10.1    Lessee acknowledges that each Authorized Board contains copyrighted trademarks, computer software and code on a specifically designed circuit board (the "Copyrights").

10.2    Lessee acknowledges the subsistence and validity of Lessor's Copyrights, and agrees not to challenge their validity or enforceability in any forum, judicial or otherwise, or before any tribunal, agency or otherwise.

10.3    By leasing the Authorized Boards, Lessee acknowledges and agrees that it is not obtaining any right, title, interest or otherwise in the Copyrights. Lessee is entitled only to use the Authorized Boards as an integrated unit in a fully assembled video game under this Agreement.

10.4    Lessee may not access, modify or copy the software used in the Authorized Board in whole or in part, nor transfer, rent, loan, lease, sublicense or otherwise distribute the same to any third party. Lessee agrees not to disassemble, decompile, or reverse engineer the software in the Authorized Board nor permit any third-party to do so. Lessee shall not remove or alter any trademark, copyright notice or other proprietary notice incorporated in, marked on or affixed to any software or documentation by Lessor or its licensors.

## SECTION 11. TITLE TO EQUIPMENT

Each Authorized Board shall remain the property of Lessor and may be removed by Lessor at any time upon the breach or termination of this Agreement. Lessee shall have no option to purchase the Authorized Boards at the termination of this Agreement.

## SECTION 12. LOSS OR DAMAGE.

If an Authorized Board shall become lost, stolen, destroyed, or damaged beyond repair for any reason other than normal wear and tear, Lessee shall promptly pay to Lessor $750 for a replacement board.

## SECTION 13. PAYMENT TO THIRD PERSON

Lessee shall comply with all instructions from Lessor as to payment of the rental charges to a person or organization other than Lessor. If requested by Lessor, Lessee agrees to pay Initial Charges and Weekly Charges against Lessee's credit card or checking account and Lessee agrees to execute any documents necessary to accomplish such payments. Failure to do so shall constitute a material breach by Lessee under this Agreement.

## SECTION 14. NOTICE

Any notice or other communication given under this Agreement shall be in writing and mailed, if to Lessor, c/o Stephen Wasinger, 300 Balmoral Centre, 32121 Woodward Avenue, Royal Oak, MI 48073, and, if to Lessee to the address first stated above, or to such other address as such parties shall designate by notice in writing to the other party.

## SECTION 15. TIME OF THE ESSENCE

Time is of the essence with respect to this Agreement.

## SECTION 16. GOVERNING LAW

This Agreement shall be governed by the laws of Michigan.

## SECTION 17. EQUITABLE RELIEF.

Lessee acknowledges that a violation by Lessee of its obligations under this Agreement, including without limitation, Lessee's obligations under Section 9, may cause irreparable damage to Lessor, and that Lessor's remedies at law for such violation may be inadequate. Therefore, Lessee agrees that Lessor will be entitled to preliminary and permanent injunctive and equitable relief against any such violation. Such equitable relief will be in addition to, and will in no way limit, Lessor's rights to other remedies at law or in equity for such violation.

## SECTION 18. CONSEQUENTIAL DAMAGES

In no event shall Lessor be liable for indirect, special, or consequential damages of any nature arising out of the existence, furnishing, functioning, or the Lessee's use of any Authorized Boards or any services provided.

## SECTION 19. ATTORNEYS' FEES

If Lessor commences litigation to enforce its rights under this Agreement, then, in addition to all other remedies available at law or in equity, Lessor shall be entitled to recover its costs and actual attorneys' fees.

## SECTION 20. INTEGRATION AND EXHIBITS

This Agreement (together with any exhibits referenced herein) shall constitute the entire agreement of the parties and supersedes all prior agreements, understandings, and negotiations. Lessor and Lessee specifically represent to each other that there are no additional or supplemental agreements between them related in any way to the Authorized Boards.

## SECTION 21. WAIVER, AMENDMENT, OR MODIFICATION

No provision of this Agreement shall be deemed waived, amended, or modified by either party unless such waiver, amendment, or modification is in writing, signed by the party against whom the waiver, amendment, or modification is sought to be enforced.

## SECTION 22. NO ASSIGNMENT OR SUBLEASE

Neither this Agreement nor any Authorized Board leased pursuant to this Agreement may be assigned or sublet by Lessee without Lessor's prior written consent.

Page 3 of 4

## SECTION 23. RELATIONSHIP OF PARTIES

Each party enters into and performs this Agreement as an independent contractor of the other party. This Agreement will not be construed as constituting a relationship of employment, agency, partnership, joint venture or any other form of legal association, except as expressly set forth in this Agreement.

## SECTION 24. OWNERSHIP OF WRITINGS

All drawings, diagrams, specifications and other material furnished by Lessor relating to use and service of the Authorized Boards, including explanatory information, shall remain the property of Lessor and may not be reproduced or distributed in any way except with the written permission of Lessor.

## SECTION 25. CONDITIONAL RELEASE FROM PAST INFRINGEMENT

Lessee admits and represents that prior to the execution of this Agreement it operated Unauthorized Boards without a license. Lessor asserts that the prior use constituted an infringement of its Copyrights and that Lessee is obligated to pay damages and other remedies for infringement, which would exceed $5,000 per Authorized Board per year. As consideration for the execution and full performance of this Agreement, Lessor agrees to release all claims for infringement upon full performance of Lessee's obligations hereunder. In the event Lessee breaches its obligations under this Agreement, then Lessee agrees, in addition to any other damages for breach of the Agreement, Lessee shall be liable for past infringements, including liquidated damages of $15,000 per Unauthorized Board, and Lessee confesses judgment in favor of Lessor in the amount of $15,000 per Unauthorized Board, plus Lessor's actual attorneys' fees.

## SECTION 26. GUARANTY

If Lessee is not an individual, the person signing on behalf of Lessee shall be personally liable for any claims or damages made by Lessor against Lessee under this Agreement. Specifically, the individual signing on behalf of the Lessee hereby unconditionally and absolutely guaranties to Lessor the full and prompt payment when due of all sums now or hereafter payable by the Lessee to Lessor pursuant to the terms of this Agreement, including, without limitation, all Initial and Weekly Charges, liquidated damages and all other sums, fees and charges of every description payable by Lessee hereunder, and the full and prompt performance of all obligations, covenants, and conditions to be observed and performed by Lessee hereunder.

This Agreement is entered into by parties below as of the date first set forth above

RDI OF MICHIGAN, LLC ("Lessor")
By: Eicon Kids, LLC, Manager

By: Robert C. Horvath
Its: Managing Member

Michigan Coin Op Vending, Inc. ("Lessor")

By: Jordan Mirch
Its: President

Jordan Mirch ("Guarantor")

By: Jordan Mirch, individually

Page 4 of 4

# EXHIBIT F

**7/5/07  COIN OP VENDING – JORDAN MIRCH – 127 BOARDS**

| SN | RDI |
|----|-----|
| 504 | 000413 |
| 503 | 000375 |
| 500 | 000474 |
| 446 | 000382 |
| 443 | 000388 |
| 427 | 000414 |
| 426 | 000416 |
| 424 | 000398 |
| 422 | 000411 |
| 420 | 000360 |
| 418 | 000351 |
| 416 | 000411 |
| 510 | 000340 |
| 448 | 000404 |
| 447 | 000396 |
| 445 | 000405 |
| 444 | 000410 |
| 428 | 000406 |
| 425 | 000417 |
| 423 | 000412 |
| 421 | 000342 |
| 419 | 000415 |
| 417 | 000353 |
| 415 | 000356 |
| 509 | 000346 |
| 508 | 000345 |
| 506 | 000397 |
| 449 | 000403 |
| 473 | 000363 |
| 474 | 000358 |
| 475 | 000364 |
| 476 | 000362 |
| 478 | 000361 |
| 525 | 000488 |
| 524 | 000464 |
| 541 | 000459 |
| 540 | 000427 |
| 542 | 000371 |
| 555 | 000458 |
| 554 | 000456 |
| 477 | 000389 |
| 543 | 000466 |
| 472 | 000376 |
| 481 | 000341 |
| 479 | 000484 |
| 483 | 000444 |
| 516 | 000381 |
| 514 | 000383 |
| 512 | 000355 |
| 484 | 000467 |

| | |
|---|---|
| 513 | 000462 |
| 515 | 000365 |
| 410 | 000436 |
| 412 | 000442 |
| 523 | 000481 |
| 522 | 000480 |
| 521 | 000475 |
| 520 | 000440 |
| 519 | 000367 |
| 518 | 000448 |
| 517 | 000463 |
| 583 | 000539 |
| 584 | 000538 |
| 586 | 000536 |
| 595 | 000531 |
| 588 | 000534 |
| 585 | 000537 |
| 589 | 000533 |
| 575 | 000522 |
| 574 | 000523 |
| 551 | 000513 |
| 548 | 000502 |
| 547 | 000498 |
| 549 | 000501 |
| 551 | 000493 |
| 560 | 000511 |
| 559 | 000512 |
| 576 | 000521 |
| 573 | 000524 |
| 569 | 000528 |
| 570 | 000527 |
| 571 | 000526 |
| 553 | 000497 |
| 572 | 000525 |
| 590 | 000532 |
| 592 | 000529 |
| 591 | 000530 |
| 577 | 000520 |
| 567 | 000504 |
| 544 | 000503 |
| 545 | 000499 |
| 566 | 000505 |
| 564 | 000507 |
| 546 | 000500 |
| 581 | 000516 |
| 580 | 000517 |
| 562 | 000509 |
| 563 | 000508 |
| 565 | 000506 |
| 561 | 000510 |
| 579 | 000518 |
| 571 | 000519 |
| 557 | 000514 |
| 556 | 000515 |
| 593 | 000492 |
| 552 | 000343 |

| | |
|---|---|
| 568 | 000490 |
| 376 | 000407 |
| 456 | 000408 |
| 455 | 000391 |
| 454 | 000386 |
| 453 | 000392 |
| 452 | 000387 |
| 451 | 000487 |
| 450 | 000486 |
| 507 | 000339 |
| 505 | 000369 |
| 502 | 000470 |
| 501 | 000457 |
| 385 | 000424 |
| 383 | 000423 |
| 382 | 000400 |
| 381 | 000430 |
| 380 | 000385 |
| 379 | 000394 |
| 378 | 000393 |
| 386 | 000337 |

# EXHIBIT G

**AFFIDAVIT OF DANIEL DOMEK**

Daniel Domek, being duly sworn, deposes and states the following:

1.  I am over 18 years of age. I have personal knowledge of the facts set forth in this Affidavit, and I am competent to testify to these matters. If called as a witness, I would testify to the following set forth below.

2.  I worked as an employee for Jordan Mirch, who operates a company called Michigan Coin-Op Vending, Inc.

3.  Mirch is engaged in the business of distributing coin operated amusement games and devices.

4.  Mirch operates routes for the placement of coin-operated amusement devices in various locations.

5.  The locations in which Mirch places coin-operated amusement devices (including a variety of video games, which includes video poker games) includes restaurants, bars and fraternal organization halls (collectively "Game Locations").

6.  Part of my job duties while working for Mirch included sales, collections, service, maintenance, and marketing Game Locations.

7.  Typically, Mirch would enter into an agreement with the proprietor, owner or tenant (the "Owner") of a Game Location whereby certain coin-operated amusement devices owned by Mirch were placed at the Game Location for use by the general public. The revenues generated through the use of the

coin-operated amusement devices were shared by Mirch and the Owner on a split percentage basis.

8.  Mirch operated at least 150 video poker games at various Game Locations in the State of Michigan.

9.  At these Game Locations, Mirch used a video poker game made Merit Industries (the "Merit Video Poker Game").

10. The Merit Video Poker Game consists of a computer software program that is copied onto a U9 computer chip, among other programmable chips, which are then positioned on a CRT 250 circuit board. The circuit board, in turn, is installed into an upright game cabinet by attaching it to a video game harness with a monitor, bill acceptor, and various buttons that control the video game. When properly assembled and rendered operational, the computer program, CRT 250 board, computer chips, harness and monitor interact to permit consumers to play a video poker game.

11. At some point, a new version of the Merit Video Poker Game was developed, which contained additional features such as bonus functions and increased speed of play (the "Enhanced Merit Video Poker Game").

12. The Enhanced Merit Video Poker Game was in demand by Mirch's customers.  Mirch purchased additional circuit boards with U9 chips that contained the enhanced features, from an individual named Martin Lustig. Later, Mirch simply purchased a U9 chip containing the enhanced program from Lustig, and used this chip to make illegal copies of the enhanced U9

chips by using an Eprom burner (a chip burner).  Consequently, instead of

Mirch having to purchase an entire circuit board with the enhanced U9 chip,

Mirch simply erased a compatible chip using an ultraviolet eraser.  Using the

Eprom burner he then copied the enhanced software program onto the

compatible chip.  Mirch instructed me, as well as other employees, to burn

enhancements onto compatible chips, and eventually, we updated every one

of Mirch's Merit Video Poker Games with enhanced U9 chips.

13.     In early 2007, Mirch informed me that these Enhanced Merit Video Poker

Games violated the copyright held by RDI of Michigan ("RDI"), and anyone

caught using an illegally enhanced game would be subject to being sued for

copyright infringement.

14.     In April 2007, to avoid copyright infringement litigation, Mirch entered into a

license and lease agreement with RDI to use an authorized modified,

enhanced version of the game (the "Authorized Boards").

15.     As part of the lease with RDI, Mirch agreed to turn over all copies of his

unauthorized enhanced versions in exchange for RDI's Authorized Boards.

16.     Mirch leased approximately 137 Authorized Boards from RDI.  After Mirch

took possession of the Authorized Boards, I, along with other employees of

Mirch, went to the Game Locations and replaced the games containing

unauthorized versions with games containing RDI's Authorized Boards.  I

gave the unauthorized boards to Mirch who put them in boxes, which were

then loaded into his truck.  He later told me that he took the unauthorized boards to his house in Troy.

17.     In late 2007, Mirch stopped paying his lease payments to RDI on the Authorized Boards, stopped paying other vendors, and was bouncing checks. A number of disgruntled vendors came into the office on a number of occasions demanding payment on bad checks and invoices not paid.

18.     In January 2008, RDI filed suit against Mirch for failing to pay his lease payments on the Authorized Boards. I talked to Mirch about the complaint, and he said "screw them."

19.     On 1/21/08, Chad Herron, another employee, and Kevin Carson, another employee, and myself were instructed by Mirch to start erasing the U9 chips from the unauthorized enhanced Merit Video Poker boards, which we had replaced with the Authorized Boards.  The unauthorized enhanced boards were in Mirch's truck.  We began unloading them and were told that we had to work quickly because we only had two days to burn replacement chips containing the old un-enhanced version of the Merit Video Poker Game. Mirch told me that he had purchased an original U9 chip from Richard Lonski, of Casino Fun Distributing Services.   Mirch explained that he had to take RDI's boards to court and could not get caught with boards in his possession that contained any of the unauthorized enhanced features.

20.     We worked continuously into the early hours of 1/23/08 replacing the chips in the boards.  Then, we went to each of Mirch's locations, removed RDI's

boards, and replaced them with the boards containing the chips we had just finished burning.

21.     Mirch then packaged the Authorized Boards into boxes and delivered them to the court on 1/23/08.

22.     After the hearing on 1/23/08, Mirch called me and in an excited tone left a message saying "we beat them."

23.     I declare that the above statements are true to the best of my knowledge, information and belief.

/s/
Daniel Domek

Subscribed and sworn to before me on March 14, 2008.

/s/

Notary public, State of Michigan, County of ~~Oakland.~~ Macomb
My commission expires: 2-24-12

JOANNE RANSOME
NOTARY PUBLIC, STATE OF MI
COUNTY OF MACOMB
MY COMMISSION EXPIRES Feb 24, 2012
ACTING IN THE COUNTY OF Oakland

# EXHIBIT H