UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RDI OF MICHIGAN, LLC,

    Plaintiff,

v.                                           Case No. 08-11177
                                           Hon. Lawrence P. Zatkoff

MICHIGAN COIN-OP VENDING,
INC. and JORDAN MIRCH,

    Defendants.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on August 24, 2009

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Plaintiff's Motion for Summary Judgment Against Defendant Jordan Mirch ("Mirch") (Docket #61), wherein Plaintiff seeks entry of a permanent injunction against Mirch and awards of statutory damages and attorney fees. Mirch filed a response, to which Plaintiff replied. The Court finds that the facts and legal arguments pertinent to the Motion are adequately presented in the parties' papers, and the decision process will not be aided by oral arguments. Therefore, pursuant to E.D. Mich. Local R. 7.1(e)(2), it is hereby ORDERED that the Motion be resolved on the briefs submitted, without this Court entertaining oral arguments. For the reasons that follow, the Court holds that (1) Plaintiff's Motion for Summary Judgment is GRANTED, (2) a permanent injunction shall be issued against Mirch, (3) Plaintiff is entitled to statutory damages, and (4) Plaintiff is entitled to attorney fees and costs.

## II. BACKGROUND

Plaintiff has an exclusive license in Michigan for the copyrights and trademarks to certain video poker games, specifically the Merit "Superstar" or "Americana" video poker games (the "Video Poker Games"). On April 9, 2007, Defendants Michigan Coin-Op Vending, Inc. ("Coin-Op") and Mirch, the owner of Coin-Op, as lessees, and Plaintiff, as lessor, entered into a Lease Agreement. Pursuant to the terms of the Lease Agreement, Defendants admitted that they had engaged in unlicensed copying of one or more Video Poker Games prior to April 2007. Under the Lease Agreement, Plaintiff granted Coin-Op and Mirch a valid license to distribute the Video Poker Games to restaurants, bars and halls throughout Michigan. Defendants distributed approximately 127 Video Poker Games under the terms of the Lease Agreement.

On January 11, 2008, Plaintiff initiated a state law breach of contract action against Coin-Op and Mirch in Oakland County Circuit Court (the "Oakland litigation"). In the Oakland litigation, Plaintiff alleged that Defendants breached their obligations by failing to make payments due under the Lease Agreement, failing to return authorized circuit boards,[1] and failing to use authorized circuit boards. Ultimately, Plaintiff obtained default judgment against Mirch in the Oakland litigation in the amount of $2,002,294.16.

On Wednesday, March 19, 2008, Plaintiff filed a Verified Complaint, Motion for Temporary Restraining Order and Brief in Support Thereof in this Court. Plaintiff alleged that Defendants began illegally copying the Video Poker Games (and/or the computer source code from which the

---

[1] A "circuit board" means the physical unit on which a U9 computer chip and other programmable chips are positioned. When the circuit boards supplied to Coin-Op and Mirch by Plaintiff (*i.e.*, the authorized circuit boards) were properly installed into a game cabinet, a consumer would be able to play the Video Poker Games.

2

Video Poker Games derive) again in January 2008 in order to avoid liability in the Oakland litigation. Two former employees of Coin-Op, Kevin Carson ("Carson") and Daniel Domek ("Domek"), have submitted affidavits wherein they state that Mirch ordered them to assist him in copying computer or circuit boards and/or U9 computer chips using the Eprom chip burner and that they did so. Both former employees state that this copying occurred during a 48-hour period immediately prior to a January 23, 2008, preliminary injunction hearing in the Oakland litigation. According to Carson and Domek, Mirch expressed to them that this copying needed to be completed quickly so that the authentic circuit boards (those that were obtained legitimately pursuant to the Lease Agreement) possessed by Coin-Op could be taken into Oakland County Circuit Court for the preliminary injunction hearing.[2]

On Thursday, March 20, 2008, the Court issued a Temporary Restraining Order, Order to Show Cause Why Preliminary Injunction Should Not Be Entered, and Order for Seizure and Impoundment of Infringing Goods (the "TRO"). On the morning of Friday, March 21, 2008, Plaintiff's owner, one of Plaintiff's attorneys, Carson and Dan Pauley (an officer of a district court in Michigan ("Pauley")) (collectively, the "Plaintiff Group") accompanied U.S. Deputy Marshal Scott Machlay ("Machlay") to Coin-Op's premises. No items were seized by the Plaintiff Group while at Coin-Op that day, but members of the Plaintiff Group asserted that they saw infringing materials on the Coin-Op premises, including U9 chips, the Eprom chip burner and ultraviolet eraser. Later that day and into the next week, Pauley (and men he assembled) executed the TRO at bars, restaurants and halls in Michigan. When doing so, they removed video machines that

---

[2]In fact, Defendants produced the authentic circuit boards at theat hearing, and the request for preliminary injunction was denied.

contained infringing materials or chips.

At a hearing held on March 27, 2008, the Court denied Defendants' motion to dissolve the TRO. The parties then entered a "Stipulation for Standstill Agreement" ("Standstill Agreement") which required Defendants to allow an inspection of the Coin-Op warehouse and other locations where the infringing Video Poker Games were located. When Defendants did not cooperate in allowing the inspection to be completed, Plaintiff renewed its motion for preliminary injunction. In an Opinion and Order dated December 8, 2008, the Court granted Plaintiff's motion for preliminary injunction against Defendants with respect to the Video Poker Games. On February 3, 2009, the Court entered a Consent Judgment stipulated to by Plaintiff and Coin-Op. The Consent Judgment provided for permanent injunctive relief against Coin-Op with respect to the Video Poker Games.

### III. LEGAL STANDARD

Summary judgment is appropriate only if the answers to the interrogatories, depositions, admissions, and pleadings, combined with any affidavits in support show that no genuine issue as to any material fact remains and that the moving party is entitled to a judgment as a matter of law. *See* FED. R. CIV. P. 56(c). A genuine issue of material fact exists when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)(citations omitted). In application of this summary judgment standard, the Court must view all materials supplied, including all pleadings, in the light most favorable to the non-moving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "If the evidence is merely colorable or is not significantly probative, summary

4

judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324. The nonmoving party must do more than show that there is some metaphysical doubt as to the material facts. It must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment. *See Moore v. Phillip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

## IV.  ANALYSIS

### A.   **Mirch Liable for Copyright Infringement**

In order to establish a claim for copyright infringement, a plaintiff must show: (1) ownership of a valid copyright, and (2) copying of constituent elements of work that are original. *Frisch's Restaurant, Inc. v. Shoney's, Inc.,* 759 F.2d 1261, 1263 (6th Cir. 1985).

*1.    Ownership*

Although Mirch previously contested the validity of the copyrights asserted by Plaintiff, Mirch makes no such defense in response to the instant motion. Moreover, the Court concludes that such a defense would be futile even if asserted.

Merit Industries, Inc. ("Merit") claimed certain works for hire which were registered with the U.S. Copyright Office. The relevant works include the Merit CRT200, CRT250 and CRT260

circuit boards and the following games in those boards: Riviera Poker, Riviera Americana, Riviera Hi Score, Joker Poker, Double Up and Chicken Poker (*i.e.*, the Video Poker Games). On March 12, 2004, Merit assigned these works/games to Riviera Distributors, Inc. ("Riviera") pursuant to a Bill of Sale and Intellectual Property Assignment. Three Certificates of Registration from the U.S. Copyright Office demonstrate that Riviera registered certain Video Poker Games in December 2004.

Riviera then entered into an Exclusive Distributorship Agreement (the "License") with Plaintiff with respect to these works on March 8, 2007. The License provides that Plaintiff has an exclusive license for Riviera's "products" in the State of Michigan. Pursuant to the License, "products" mean

> the hardware and software sold by [Riviera] to [Plaintiff], which relate to [Riviera]'s proprietary circuit board designed to operate the software based upon the Riviera Americana source code and/or any other video poker games sold by [Riviera].

The License also provides that Plaintiff has the right to enforce the "copyrights" within the State of Michigan and to sue for any past, present or future infringement of the copyrights. Pursuant to the License, "copyrights" means

> any and all copyrights owned by [Riviera] covering any of the software, hardware, and/or audiovisual elements, including, but not limited to, computer code and graphic interface, which are incorporated or included in any of the Products; . . .

Based on the foregoing instruments, the Court finds that Plaintiff is the exclusive licensee (owner) of the Video Poker Games in Michigan.

*2. Copying*

The Court also concludes that Mirch (together with and/or through Coin-Op) engaged in the illegal copying of the Video Poker Games by using the Eprom chip burner and ultraviolet eraser,

6

both before and after the TRO was issued by this Court. As the affidavits of Carson and Domek reveal, Defendants engaged in illegal copying of the Video Poker Games in January 2008. After the TRO was issued but prior to the March 27, 2008, hearing, the U.S. Marshal Service caused 72 machines to be seized from 33 locations pursuant to the TRO. In the days after the March 27, 2008, hearing, Mirch went to locations where the games had been seized and told the owners of those locations that he was entitled to replace the seized games and then he did so. Affidavits attested to by Pauley and others demonstrate that the replacement games installed by Defendants included "knock-off chips," thereby violating the TRO and applicable law.

In addition, when William Kroger[3] went to look at the machines, it was discovered that Defendants had removed infringing video games from the storage facility where seized games were being held (and/or the U9 chips discovered during the March 21, 2008, search had been removed). Further, when Mr. Kroger went to some establishments, it was discovered that games not previously seized and inspected also were infringing games.

For the foregoing reasons, the Court finds that Mirch engaged in illegal copying of the Video Poker Games, both before and after the Court issued the TRO.

*3.     Mirch's Argument*

Although Mirch filed a brief in response to Plaintiff's Motion for Summary Judgment, Mirch did not contest that he infringed on Plaintiff's copyrights. The sole argument asserted by Mirch in his response brief was that Plaintiff is not entitled to entry of judgment because "[t]his case is based upon the same transaction and the same claims as contained in" the Oakland litigation, where an

---

[3] Pursuant to the Standstill Agreement, Mr. Kroger is the person the parties agreed would conduct inspections of seized and non-seized games to determine if there was any infringement by Coin-Op and Mirch.

approximately $2,000,000 judgment was entered in Plaintiff's favor against Mirch. Thus, Mirch argues a second judgment cannot be entered against him because it would be constitute an impermissible double recovery. More specifically, Mirch argues that the award in the Oakland litigation constituted actual damages for the copyright infringement, thus making improper Plaintiff's request for statutory damages. *See* 17 U.S.C. § 504(a) (providing that "an infringer of copyright is liable for *either* – (1) the copyright owner's actual damages and any additional profits of the infringer, . . . ; or (2) statutory damages, . . .") (emphasis added).

Mirch's argument is flawed for two reasons. First, the Oakland litigation involved only state law breach of contract claims related to the Lease Agreement. The Oakland litigation did not involve any copyright infringement claims, and the default judgment entered against Mirch was not related to the copyright infringement claims at issue in this case. Therefore, no damages related to copyright infringement have been awarded to Plaintiff to date. Thus, the Court is not persuaded that 17 U.S.C. § 504(a) bars recovery by Plaintiff for Mirch's copyright infringement.

Second, the conduct of Defendants at issue in this case did not even commence until January 21, 2008, *i.e.*, 10 days after the Oakland litigation was filed. Accordingly, Plaintiff's infringement claims based on such conduct could not have been asserted when the Oakland litigation was filed. Therefore, to the extent Mirch's argument could be construed as an argument that this action is barred by res judicata or collateral estoppel, his argument lacks merit.

    *4.*    *Conclusion*

For the reasons set forth above, the Court grants Plaintiff's Motion for Summary Judgment on its cause of action. In conjunction with that finding, the Court further concludes that (a) the issuance of a permanent injunction, (b) an award of statutory damages, and (c) an award of attorney

fees, are justified, as discussed below.

**B.     Permanent Injunction**

Based on the Court's conclusion that Mirch has infringed on Plaintiff's copyrights on multiple occasions, the Court finds that Plaintiff's request for a permanent injunction against Mirch with respect to the Video Poker Games is appropriate and warranted. Therefore, the Court ORDERS that Mirch, individually and/or in active concert, privity or participation with any other person(s) or entity(ies), is permanently restrained and enjoined from:

1. operating, copying, reproducing, selling, offering for sale, or displaying;
2. transferring, moving, relocating, disposing of, dissipating, discarding, secreting, or hiding; and
3. tampering with, modifying, changing, converting, altering, adjusting, repairing, amending, revising, or varying

any video poker game that incorporates, is copied from, infringes upon, is derivative of, or is an enhancement of the Merit "Superstar" or "Americana" video poker games or the computer source code from which they derive, copyrights for which are owned and/or exclusively licensed by Plaintiff, including, but not limited to: any such complete video poker games; computer or circuit board(s); U9 computer chip(s); computer equipment; or any other electronic storage devices, including DVDs and/or computer storage disks upon which computer code may be stored.

**C.     Statutory Damages**

Pursuant to 17 U.S.C. § 504(c)(1), a copyright owner may elect, at any time before final judgment, to recover statutory damages rather than actual damages and profits for all infringements. Statutory damages may be awarded "in a sum not less than $750 and not greater than $30,000 as the court considers just." *Id.* In a case where a plaintiff proves and the court finds that a defendant committed the infringement willfully, however, "the court in its discretion may increase the award

of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2).

Plaintiff asks the Court to award $150,000 in statutory damages based on the willful infringement of Plaintiff's copyrights by Mirch. The Court finds that request reasonable in light of the conduct of Mirch. First, as Mirch acknowledged in entering into the Lease Agreement, he had engaged in unlicensed copying of one or more Video Poker Games prior to April 2007. Second, in conjunction with the Oakland litigation and the actions related thereto that served as the impetus for the present action, Mirch ordered his employees to assist him in illegal copying of the Video Poker Games and/or circuit boards in January 2008. This willful infringement of Plaintiff's copyrights was designed to (and apparently did) deceive the Oakland County Circuit Court at a preliminary injunction hearing held on January 23, 2008. Finally, even after this Court entered a TRO prohibiting Mirch from copying any of the Video Poker Games, Mirch continued to do so.

Based on all of these actions, the Court concludes that Mirch willfully infringed on Plaintiff's copyrights and that such willful infringement justifies a significant award of statutory damages. Plaintiff has contended repeatedly that Defendants would generate revenue of $40,000/game per year for each of the 100-plus games covered by the Lease Agreement, a contention that Mirch has not disputed. In addition, in its Complaint and in the Motion for Summary Judgment, Plaintiff asserted that the licensing and royalty fees Defendants would owe Plaintiff would exceed $150,000 per year. Mirch has not contested that statement, either. Accordingly, the Court finds that an award of $150,000 in statutory damages, which is less than the actual damages and profits Plaintiff could recover in this action, is appropriate in this case. The Court hereby ORDERS that Mirch pay Plaintiff $150,000 as statutory damages.

**D.     Attorney Fees**

17 U.S.C. § 505 provides:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

The Sixth Circuit has recognized that awarding fees and costs "is the rule rather than the exception and [they] should be awarded routinely." *Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 592 (6th Cir. 2008). Where the defendant's conduct involved willful infringement of copyrights, attorney fees are even more appropriate. *See, e.g., Zomba Enterprises v. Panorama Records, Inc.*, 491 F.3d 574, 586 (6th Cir. 2007) (manufacturer's infringements were willful and justified enhanced statutory damages and attorney fees); *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1010 (2d Cir. 1995) ("The court's finding of willfulness supported both its award of enhanced statutory damages, pursuant to 17 U.S.C. § 504(c)(2), and its award of full attorney's fees").

As discussed above, the Court not only finds that Mirch infringed on Plaintiff's copyrights but also finds that Mirch's infringements were willful. As (a) the award of fees and costs is the rule rather than the exception, and (b) an award of fees is even more appropriate where the infringement is willful, the Court holds that Plaintiff is entitled to attorney fees and costs incurred in prosecuting this action. Accordingly, the Court ORDERS Plaintiff to provide the Court with a detailed invoice of costs and fees incurred in conjunction with this case. Plaintiff shall file such invoice and, if it desires, any support for the amount of such request, no later than September 18, 2009. To the extent Mirch objects to the amount of the fees and costs Plaintiff requests, Mirch shall file such objection(s) on or before October 9, 2009.

11

## V. CONCLUSION

Accordingly, and for the reasons set forth above, the Court hereby GRANTS Plaintiff's Motion for Summary Judgment, and IT IS HEREBY ORDERED that Mirch, individually and/or in active concert, privity or participation with any other person(s) or entity(ies), is permanently restrained and enjoined from:

1. operating, copying, reproducing, selling, offering for sale, or displaying;

3. transferring, moving, relocating, disposing of, dissipating, discarding, secreting, or hiding; and

5. tampering with, modifying, changing, converting, altering, adjusting, repairing, amending, revising, or varying

any video poker game that incorporates, is copied from, infringes upon, is derivative of, or is an enhancement of the Merit "Superstar" or "Americana" video poker games or the computer source code from which they derive, copyrights for which are owned and/or exclusively licensed by Plaintiff, including, but not limited to: any such complete video poker games; computer or circuit board(s); U9 computer chip(s); computer equipment; or any other electronic storage devices, including DVDs and/or computer storage disks upon which computer code may be stored.

IT IS FURTHER ORDERED that Mirch shall pay Plaintiff $150,000 in statutory damages.

IT IS FURTHER ORDERED that Mirch shall reimburse Plaintiff for attorney fees and costs incurred in conjunction with this case, in an amount to be determined by the Court. Plaintiff shall provide the Court with a detailed invoice of costs incurred in conjunction with this case, together with support for such amount if Plaintiff desires, on or before September 18, 2009. Mirch shall file objections thereto, if any, on or before October 9, 2009.

Judgment shall be entered separately and at such time as the Court has determined the amount of fees and costs to which Plaintiff is entitled.

IT IS SO ORDERED.

                                        S/Lawrence P. Zatkoff
                                        LAWRENCE P. ZATKOFF
                                        UNITED STATES DISTRICT JUDGE

Dated:  August 24, 2009

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on August 24, 2009.

                                        S/Marie E. Verlinde
                                        Case Manager
                                        (810) 984-3290