UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RDI OF MICHIGAN, LLC,

Plaintiff,

v.

Case No. 08-11177
Hon.  Lawrence P. Zatkoff

MICHIGAN COIN-OP VENDING, INC,
JORDAN MIRCH, and DOES I-V
and ROES VI-IX,

Defendants.

_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the U.S. Courthouse,
in the City of Port Huron, State of Michigan,
on the 1ST  day of September, 2011

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I.  INTRODUCTION

This matter is before the Court on Defendant Jordan Mirch's ("Mirch") Motion to Set Aside

Order of Judgment (the "Motion") (Docket #74).  Plaintiff has filed a response.  The period to reply

has expired, and Mirch did not file a reply. The Court finds that the facts and legal arguments

pertinent to the Motion are thoroughly presented in the parties' papers, and the decision process will

not be aided by oral arguments.  Therefore, pursuant to E.D. Mich. Local R. 7.1(f)(2), it is hereby

ORDERED that the Motion be resolved on the briefs submitted, without this Court entertaining oral

arguments.  For the reasons that follow, the Motion is DENIED.

## II.  BACKGROUND

The factual background set forth below is taken from the brief Mirch filed in support of the Motion.

Mirch owned a company named Michigan Coin Op-Vending, Inc. ("MCOV").  MCOV was in the business of distributing coin operated amusement games and devices.  MCOV typically placed its coin-operated amusement devises in restaurants, bars and halls.  Plaintiff is a Michigan limited liability company.  In this litigation, Plaintiff claimed that it is the exclusive licensee in the State of Michigan for the sale and distribution of copyrights software programs commonly known as the "Michigan Superstar" video poker machines (the "Video Poker Games"). According to Plaintiff, Riviera Distributors, Inc. ("Riviera") registered the Video Poker Games with the U.S. Copyright Office. The Video Poker Games were derivative works of earlier versions of the certain video poker games that were registered with the United States Copyright Office by Merit Industries, Inc. ("Merit"). Riviera acquired the Video Poker Games (in earlier versions) from Merit pursuant to a Bill of Sale dated March 8, 2004 (the "Bill of Sale").  Riviera then licensed them to Plaintiff.

In early 2007, Plaintiff alleged that MCOV was infringing upon Plaintiff's rights in the Video Poker Games. MCOV and Plaintiff resolved that dispute by agreeing to the terms of a lease (the "Lease") under which MCOV agreed to lease the rights to distribute the Video Poker Games. After several months, MCOV could no longer maintain the payments under the Lease.  As a result, on January 11, 2008, Plaintiff initiated a state law breach of contract action against Mirch and MCOV in Oakland County Circuit Court. The Oakland County Circuit Court action resulted in a judgment against Mirch that allegedly was overturned by the Michigan Court of Appeals. Ultimately, that breach of contract claim was discharged by Mirch in his bankruptcy.

On March 19, 2008, Plaintiff filed a four-count Verified Complaint in this Court against

2

Mirch and MCOV. Plaintiff claimed that MCOV and Mirch committed copyright infringement with respect to the Video Poker Games. Plaintiff's managing member verified the Verified Complaint under oath. In support of Plaintiff's claims that it had a copyright interest in the Video Poker Games, Plaintiff's managing member made the following verified allegations:

(i)     Plaintiff is the exclusive licensee in Michigan of copyrights and trademarks for the Video Poker Games, which are commonly known as the Michigan Superstar.

(ii)    Merit registered the copyrights related to the Video Poker Games.

(iii)   Riviera obtained all right, title and interest in the Video Poker Game's copyrights and intellectual property from Merit under a Bill of Sale and Intellectual Property Assignment as of March 12, 2004.

(iv)   Plaintiff became the exclusive licensee for the sale and distribution of the Video Poker Games under an exclusive license agreement with Riviera.

Based on these allegations and others in the Verified Complaint, on March 20, 2008, the Court issued a Temporary Restraining Order and an Order to Show Cause Why Preliminary Injunction Should Not Be Entered (the "Show Cause Order"). According to Mirch, the key piece of evidence Plaintiff submitted in this case was the affidavit of Larry L. Hartley ("Hartley"), the President of Riviera. Hartley further testified that:

(i)     Riviera acquired all intellectual property rights to the Video Poker Games from Merit under a Bill of Sale and an Intellectual Property Assignment dated March 12, 2004.

(ii)    Riviera registered the exact code delivered by Merit to Riviera.

(iii)   Riviera is the sole proprietor of all right, title and interest in the Americana Poker Program for CRT 260 and the Americana Poker Program for the CRT 250.

(iv)   Riviera enhanced the original Merit Riviera Americana Code, specifically related to the "Michigan Superstar" version, which it copyrighted.

(v)    The computer code provided by Merit to Riviera under the Bill of Sale generates the "Michigan Superstar" version or model of a Riviera poker game.

3

According to Mirch, Hartley's affidavit is critical because it established a chain of title for the Video Poker Games between Merit and Riviera. Furthermore, Hartley's affidavit essentially rebutted the main argument that Defendant made in his response to the Show Cause Order (that Plaintiff had no interest in the Video Poker Games because there was no chain of title from Merit to Plaintiff). Mirch argued that, while it appeared that Merit executed an "Intellectual Property Assignment" and a "Bill of Sale" in favor of Riviera, Merit only transferred the intellectual property rights to six video poker games, which did not include the rights to the video poker games commonly referred to as the "Michigan Superstar" (which are the Video Poker Games at issue in this lawsuit). Thus, Mirch argued that Riviera never had an interest in the Video Poker Games. As a result, Mirch maintained that Riviera could not have assigned any rights in the Video Poker Games to Plaintiff. In determining whether to grant a preliminary injunction in favor of Plaintiff, the Court rejected Mirch's argument that there was no chain of title in the Video Poker Games from Merit to Plaintiff, finding instead that the "Bill of Sale, Intellectual Property Assignment and License filed with the Court contradict [Mirch's and MCOV's] position regarding Plaintiff's exclusive license (ownership) of the Video Poker Games." As a result, the Court entered an order granting a preliminary injunction.

On February 19, 2009, Plaintiff filed a motion for summary judgment (the "Judgment Motion"). In the Judgment Motion, Plaintiff once again claimed to have an exclusive license in the Video Poker Games under the Exclusive Distributorship Agreement (the "EDA") it entered into with Riviera. Plaintiff again asserted that Riviera obtained all right, title and interest in the Video Poker Games from Merit pursuant to a Bill of Sale and an Intellectual Property Assignment. In support of this claim, Plaintiff again referred the Court to Hartley's affidavit. In his March 2009 response

4

to the Judgment Motion, Mirch did not contest Plaintiff's assertion that it had an exclusive license in the Video Poker Games. Mirch instead argued that Plaintiff could not pursue a judgment in this Court when Plaintiff already had a judgment against Mirch in the Oakland County Circuit Court. The Court rejected Mirch's argument and granted Plaintiff's Judgment Motion in an Opinion and Order dated August 24, 2009.  In the Court's Opinion and Order, the Court specifically noted that Mirch did not contest Plaintiff's copyright interest in the Video Poker Games. The Court further stated that even if Mirch had contested Plaintiff's interest in the Video Poker Games, such an argument would have been futile.  As a result, the Court awarded Plaintiff statutory damages in the amount of $150,000.00 (the "Statutory Damages Award").  In addition, the Court held that Plaintiff was entitled to attorney fees and costs incurred in prosecuting this action and directed Plaintiff to submit documentation of such fees and costs.

In September 2009, Plaintiff submitted a detailed invoice of fees and costs it incurred in this litigation. Mirch did not file an objection to Plaintiff's fees and costs.  On February 9, 2010, the Court awarded Plaintiff $71,947.50 in attorney fees (the "Attorney Fees Award").  It also ordered Plaintiff to provide the Court with evidence that Plaintiff actually incurred $42,193.11 in costs.  On February 12, 2010, Plaintiff filed with the Court an affidavit and other documents in support of its costs it allegedly incurred in this case.  This affidavit was filed by Plaintiff's new counsel, Richard Poling, because Plaintiff's counsel of record in this case, Steve Wassinger and Anthony DeLuca, had recently filed a motion to withdraw as counsel. Based on these documents and the Court's other rulings in this case, the Court entered an Order of Judgment in the amount of $264,140.61 (the "Judgment") on February 18, 2010. This amount includes (i) Statutory Damages Award, (ii) the Attorney Fees Award, and (iii) $42,193.11 in costs.

5

While this copyright proceeding was ongoing, Plaintiff commenced an adversary proceeding against Mirch in his personal bankruptcy case (the "Adversary Proceeding"). The purpose of the Adversary Proceeding was in part to obtain an order determining that Plaintiff's copyright infringement claim against Mirch was non-dischargeable. The Bankruptcy Court conducted the trial in the Adversary Proceeding on December 8, 2010. On the eve of the trial, Mirch and his new counsel, Kenneth Beams (Mirch's current counsel in this matter), learned that Plaintiff was being sued by Riviera in the United States District Court for the Eastern District of Michigan, Case No. 09-cv-11380-PJD (the "Riviera Lawsuit").

In the Riviera Lawsuit, Riviera brought claims alleging that Plaintiff had breached the EDA and sought termination of the EDA. As part of its defense in the Riviera Litigation, Plaintiff argued that Riviera never owned an interest in the copyrights related to the Video Poker Games. Plaintiff's argument was based on the taking of the deposition of Merit's former Vice President, James Steltzer ("Steltzer"), on January 28, 2010. According to Plaintiff, Steltzer testified that Merit did not sell or license any rights to the Video Poker Games to Riviera. Plaintiff then stated that, until Steltzer's deposition, it had never been "confirmed" by Merit to Plaintiff that Merit did not license or sell any rights in the Video Poker Games to Riviera.

Mirch now argues that, because of Plaintiff's failure to advise the Court of the false evidence it submitted (the false evidence being that Plaintiff did not have ownership/license of the Video Poker Games, as established by Plaintiff's contentions in the Riviera Lawsuit following the Steltzer deposition), the Court must set aside the Judgment, the Statutory Damages Award, and the Attorney Fees Award.

6

## III.  LEGAL STANDARD

Rule 60(b) provides that "the court *may* relieve a party" from a final judgment, however, a party has no *right* to relief.  A court has broad discretion in determining a Rule 60(b) motion, and "[t]he discretion is not an arbitrary one to be capriciously exercised, but a sound legal discretion guided by accepted legal principles[,]" including the following:

1.      The finality of judgments is of great importance and should not be disturbed lightly.;

2.      Courts have discretion to determine whether the moving party acted within a "reasonable" time and in an equitable manner; and

3.      Relief from a judgment may be inappropriate if parties have relied on it or if circumstances are such that setting it aside would cause prejudice to a party.

*See* 12-60 *Moore's Fed. Prac., Civil* § 60.22 (citations omitted).

Fed. R. Civ. Pro. 60(b)(3) provides that a court may relieve a party from a final judgment, order or proceeding when the moving party demonstrates that there has been fraud, misrepresentation or misconduct by the opposing party. A motion under Rule 60(b)(3) must be made within a reasonable time, but no more than one year after the entry of the judgment or order or the date of the proceeding.   Rule 60(b)(6) provides that a court may relieve a party from a final judgment or order for any reason justifying relief, provided however, that Rule 60(b)(6) is to used only: (a) in exceptional or extraordinary circumstances that (b) are not addressed by the first five enumerated clauses of Rule  60(b). *Hopper v. Euclid Manor Nursing Home*, 867 F.2d 291, 294 (6th Cir. 1989). Such a motion also must be brought within a reasonable time.

## IV. ANALYSIS

In the Motion, Mirch argues that Steltzer's testimony that Merit did not sell any rights in the

Video Poker Games to Riviera proves that Riviera did not own the copyright for (and therefore Plaintiff could not have had a valid license to) the Video Poker Games the Court held that Mirch infringed. Notwithstanding Mirch's conjecture, the Court concludes that the Motion should be denied for the following reasons.

### A.    Rule 60(b)(3)

Under Rule 60(b)(3), Plaintiff would have to demonstrate to the Court that Plaintiff committed fraud, a misrepresentation or misconduct before this Court. Mirch asserts that Plaintiff's arguments in the Riviera Litigation establish that: (1) Plaintiff believed at the time of filing this cause of action that Riviera did not own the copyright for, and Plaintiff did not have a valid license to, the Video Poker Games when Plaintiff entered into the Lease with Mirch and MCOV, and (2) Steltzer's testimony confirmed Plaintiff's belief approximately a month before the Court's entry of judgment in this case. The Court, however, finds that Plaintiff has presented the Court with no evidence to establish that Riviera does not own the copyright for Video Poker Games, including the Michigan Superstar game.

First, even assuming for argument's sake that Merit did not sell the rights to the Video Poker Games to Riviera under the Bill of Sale in March 2004 (as alleged by Steltzer), no one, including Merit, can challenge the validity of Riviera's copyrights in the Video Poker Games after the running of the three-year statute of limitations period under 17 U.S.C. 507(b). The statute of limitations period regarding the copyright on the Michigan Superstar game expired in March 2007, *i.e.*, before the Lease was executed in April 2007, before this cause of action was filed in March 2008, and long before this Court entered judgment in February 2010. As such, even if Mirch ever had standing to challenge the validity of Riviera's copyright(s) for the Video Poker Games, the time period within

which Mirch could have done so has long since passed.

Second, the deposition testimony of Stelzer (that the Bill of Sale did not include the Video Poker Games that Riviera represented it owned to Plaintiff in the EDA) does not establish that Riviera lacked title/copyrights to the Video Poker Games or that Plaintiff did not have a valid license for the Video Poker Games. Steltzer's testimony was in unrelated case, and at the time of the deposition, Steltzer was no longer employed by Merit. Instead, he testified at the deposition in his individual capacity and none of his testimony was binding on Merit or Riviera. Thus, Steltzer's opinion that Riviera did not hold the copyright(s) to the Video Poker Games pursuant to the Bill of Sale does not establish that Riviera did not hold the copyright(s) to them in March 2007, when Plaintiff entered into the Lease with Mirch and MCOV.

Third, the issue in this case was not whether Riviera purchased the Video Poker Games under the Bill of Sale, but whether Mirch infringed on the copyrights to the game held by Riviera and Plaintiff (via the EDA). As set forth above, even if Merit did not transfer rights in the Video Poker Games to Riviera in March 2004, Riviera held the copyright(s) to the Video Poker Games no later than March 2007.

Fourth, the Court notes that Mirch: (1) stipulated not to contest the validity of the copyright(s) for the Video Poker Games (when he entered the Lease in April 2007); (2) did not contest the validity of Plaintiff's license to distribute the Video Poker Games (and the copyright(s) held by Riviera in them) or that he was liable to Plaintiff for copyright infringement (in his Response to Plaintiff's Motion for Summary Judgment in March 2009); and (3) agreed to settle all claims and defenses against Plaintiff under the Consent Judgment filed in Bankruptcy Court (on January 12, 2011 - a month after learning that Plaintiff was claiming that Riviera never had an interest in the

Video Poker Games).[1]  As such, the Court finds that Mirch repeatedly waived his right to challenge the validity of the copyrights to the Video Poker Games held by Riviera (and licensed by Plaintiff during the period the Lease was in effect).

Finally, the Court finds that Mirch has failed to establish that Plaintiff engaged in fraud, misrepresentation or misconduct toward the Court.  Mirch has the burden of establishing, by clear and convincing evidence, that (a) Plaintiff engaged in fraud or other misconduct, and (b) Plaintiff's misconduct prevented Mirch from fully and fairly litigating his case. *Cincinnati Ins. Co. v. Crossmann Cmtys. P'ship*, 2010 U.S. Dist. LEXIS 2290 (E.D. Ky. Jan. 12, 2010) (fraud must be proven by clear and convincing evidence by the moving party). "Fraud is the knowing misrepresentation of a material fact, or concealment of the same when there is a duty to disclose, done to induce another to act to his or her detriment. *Info-Hold, Inc. v. Sound Merch., Inc*., 538 F.3d 448, 456 (6th Cir. 2008) citing to BLACKS LAW DICTIONARY 685 (8th ed. 2004); 37 Am. JUR. 2D *Fraud and Deceit §* 23 (2001) ("The five traditional elements of fraud ... include: [1] a false representation; [2] in reference to a material fact; [3] made with knowledge of its falsity; [4] with the intent to deceive; and [5] on which an action is taken in justifiable reliance upon the representation.").

Here, the Court finds that Mirch has not set forth any evidence that Plaintiff made a false representation because there is no evidence that Plaintiff had personal knowledge that the Hartley affidavit contained false information when litigating this cause of action.  Likewise, Mirch has

---

[1]Mirch does not specifically state that he learned of Plaintiff's position in the Riviera litigation on December 8, 2010.  In his brief in support of the Motion, however, he states that he filed "this motion just two months after learning that [Plaintiff] claims that Riviera never had an interest in the Video Poker Games[.]" The Motion was filed on February 8, 2011.

10

offered no evidence that Plaintiff misrepresented any information to Mirch with the intent to deceive Mirch.

**B.     Rule 60(b)(6)**

The Court also is not persuaded that Mirch is entitled to relief pursuant to Rule 60(b)(6). "Rule 60(b)(6) ... grants federal courts broad authority to relieve a party from a final judgment ... provided that the motion ... is not premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5)." *Liljeberg v. Health Servs. Corp.,* 486 U.S. 847, 863 & n.11, 108 S. Ct. 2194, 100 L. Ed. 2d 855 (1988). Here, the Motion was premised on Rule 60(b)(3). Accordingly, the Court concludes Mirch cannot also seek relief pursuant to Rule 60(b)(3).

## V.  CONCLUSION

Accordingly, and for the reasons set forth above, the Court hereby DENIES Mirch's Motion to Set Aside Order of Judgment (Docket #74).

IT IS SO ORDERED.

S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**Dated:  September 1, 2011**

CERTIFICATE OF SERVICE

11

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on September 1, 2011.

S/Marie E. Verlinde
Case Manager
(810) 984-3290

12